Charles E. Ortiz
Susan T. Ortiz
11c23292@gmail.com
37331 Gilkey Road
Scio, OR 97374
503-394-3783

Plaintiff, appearing *Pro Se*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| **CHARLES E. ORTIZ and SUSAN T. ORTIZ,** | Case No.:  6:20-cv-00826-AA |
| Plaintiff, | |
| vs. | **COMPLAINT TO PETITION FOR JUDICIAL REVIEW OF ADMINISTRATIVE ACTION, DECLARATORY JUDGMENT, AND OTHER RELIEF** |
| **UNITED STATES GOVERNMENT through GEORGE ERVIN "SONNY" PERDUE III, in his official capacity as Secretary of the U.S. Department of Agriculture; and RICHARD FORDYCE, in his official capacity as Administrator of the Farm Service Agency, a subdivision of the U.S. Department of Agriculture** | |
| Defendants | |

COMES NOW Plaintiffs, Charles E. Ortiz and Susan T. Ortiz, *pro se*, and files this Complaint against the above-named Defendants for Judicial Review of Administrative Action, Declaratory Judgment, and Other Relief, and in support thereof alleges and states as follows:

**NATURE OF THE ACTION**

1.    This is an action for Judicial Review of final Agency Action under the Administrative Procedures Act, 5 U.S.C. §701, *et. seq.*; Declaratory Judgment, and Other Relief.   Plaintiff seeks review of the decision rendered on Defendants' behalf by James T. Murray, Deputy Director, National Appeals Division ("NAD"), United States Department of Agriculture ("USDA") upholding a decision made by the United States Department of Agriculture's Farm Service Agency ("FSA" or "Agency") that Plaintiff incurred a Federal debt in the amount of $83,003.88 plus interest upon the FSA's payment to Plaintiff's former lender pursuant to a loan guarantee, dated June 2, 2014, and received by Plaintiff's on June 9, 2014, attached hereto as "Exhibit A".

2.    Because the regulations relied upon by the FSA do not authorize the creation of a Federal debt in this circumstance and there is no other legal basis upon which FSA can rightfully demand reimbursement from Plaintiff for its payment, Plaintiff seeks declaratory judgment that the June 2, 2014 decision and the underlying decisions were arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law; were in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; were in violation of contracts between the parties; were without observation of procedures required by law; were unwarranted by the facts; and are not substantially justified or supported by substantial evidence. Plaintiffs seek both injunctive and declaratory relief and the recovery of their reasonable attorney fees and costs associated with their defense.

**COMPLAINT FOR JUDICIAL REVIEW**

3.    The Ortiz have not been provided the opportunity to appeal the actions and adverse decisions of the FSA in servicing the loan guarantee and arriving at the final decision that the Ortiz owe a federal debt because the National Appeals Division wrongfully contracted their authority.

4.    The actions of NAD and FSA denied the Ortiz of the benefits of the FSA farm loan program, including but not limited to the right to due process, supervised and managed credit, management assistance, timely notice of adverse decisions, primary loan servicing opportunities, timely liquidation of their loan, and timely determinations regarding the propriety of the Bank's claim.

5.    The actions of the USDA denied the Ortiz the right of due process and caused them substantive harm.

6.    USDA has improperly used the appeals process as a shield whereby the improprieties of the loss claim payment may never see the light of the court while depriving Plaintiffs of their property without due process of law.

7.    Plaintiffs seek review of the NAD Determinations and the validity of the Final Loss Claim and Agency actions in their entirety as between the Agency and the Plaintiffs.

### JURISDICTION AND VENUE

8.    Jurisdiction in this Court is proper pursuant to 7 U.S.C § 6999 and 5 U.S.C. § 701 *et seq.* because the June 2, 2014 decision of the National Appeals Division was a final determination of the Agency.

9.    Jurisdiction in this Court is proper pursuant to 28 U.S.C § 1331 because this action arises under the laws of the United States, including the statutes concerning USDA farm credit programs (Title 7, Chapter 50 of the United States Code) and related regulations, the Administrative Procedures Act (5 U.S.C. § 701, et seq.), and the Declaratory Judgment Act (28 U.S.C. § 2201 & 2202).

10.     Jurisdiction in this Court is also proper pursuant to 28 U.S.C. § 1346 because this action is against the United States and is founded upon an Act of Congress.

11.     Defendant has waived sovereign immunity pursuant to 7 U.S.C. § 6999 and 5 U.S.C. § 702.

12.     Venue is proper in the Oregon District. Eugene Division, pursuant to 28 U.S.C. §§ 1391 (b) and (e) because Plaintiffs reside in this district and division, no real property is involved in this action, and a substantial part of the events or omissions giving rise to the claim occurred in this district.

13.     This controversy is ripe for judicial review because Plaintiff has exhausted all administrative remedies through the United States Department of Agriculture. Final agency action, for purposes of judicial review pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 702 and 704, was taken by the National Appeals Division of the U.S. Department of Agriculture on June 2, 2014.

**PARTIES**

14.     Plaintiff Charles E. Ortiz is a Hispanic male, and a United States citizen who is and was, at all relevant times, a resident of Linn County, Oregon.

15.     Plaintiff Susan T. Ortiz is a Caucasian female with a Hispanic surname, and a United States citizen who is and was, at all relevant times, a resident of Linn County, Oregon.

16.     Plaintiff's Charles E. Ortiz and Susan T. Ortiz are husband and wife. Plaintiffs collectively are referred to as "Ortiz", "borrower" or "plaintiffs" herein. The Ortiz had agricultural loans guaranteed by the Defendant USDA Farm Service Agency.

17.     Defendant George Ervin "Sonny" Perdue III is Secretary of the USDA, a subdivision of the United States Government, and is sued in his capacity as the official responsible for implementing all statutory and regulatory requirements pertaining to the USDA, including administration of the USDA Farm Service Agency's farm credit

1    programs established pursuant to Title 7, Chapter 50 of the United States Code, which

2    includes the FSA's guaranteed loan programs, the applicable regulations for which are

3    promulgated at 7 C.F.R. Part 762. Defendant is also the official responsible for the

4    administration of the National Appeals Division, established pursuant to 7 U.S.C. § 6991

5    et seq. and applicable regulations at 7 C.F.R.  Part 11. Defendant Purdue is ultimately

6    responsible for the National Appeals Division's June 2, 2014 Determination regarding

7    Plaintiff and the November 13, 2013 FSA decision which it upheld.    Allegations herein

8    against the United States Government, USDA, the FSA, the NAD, or their branches,

9    divisions, or employees, are intended to be understood as allegations against

10   Defendant. Secretary Perdue is the properly named defendant pursuant to 5 U.S.C. §

11   703. Defendant United States Department of Agriculture is a department of the

12   government of the United States.  His address is 1400 Independence Avenue, S.W.,

13   Washington, D.C. 20250.

14   18.    Defendant Richard Fordyce is the Administrator for the USDA Farm Service

15   Agency, which is responsible for the loan guarantee at issue in this case. Administrator

16   Fordyce is sued in his official capacity. His address is 1400 Independence Avenue,

17   S.W., STOP 0506, Washington, D.C. 20250-0506.

18

19                                    **GENERAL ALLEGATIONS**

20               **THE FRAMEWORK FOR THE USDA - FSA LOAN GUARANTEE**

21   19.    The USDA-FSA Farm Loan Programs are authorized by Congress under Part

22   1921 of Title 7 of the United States Code (7 U.S.C. § 1921) generally referred to as the

23   Consolidated Farm and Rural Development Act; 7 U.S.C. § 1921 *et seq.*

24   20.    The terms upon which the Lender may make claim upon the Loan Guarantee are

25   stringent and precise.  The controlling regulations are at Part 762 of Title 7 of the Code

26

1   of Federal Regulations (7 C.F.R. § 762). FSA's Guaranteed Loan Making and Servicing

2   Handbook (2-FLP) interprets 7 C.F.R. § Part 762.

3   21.    The FSA, through guaranty conditions, has control over the lender's behavior,

4   and the continuing authority to monitor compliance with the conditions of the guarantee.

5   *Buffalo River Watershed Alliance v. Department of Agriculture*, No. 4:13-cv-450-DPM

6   (E.D. Arkansas 2014); *Ashley v. U.S. Department of Interior,* 408 F.3d 997, 1003 (8th

7   Cir. 2005).

8   22.    A loan guarantee may not be enforced by a lender to the extent the loss results

9   from negligent servicing, failure to obtain the required security, or failure to use loan

10  funds for purposes specifically approved by the Agency, regardless of when the Agency

11  acquires knowledge of the foregoing.  7 C.F.R.  § 762.103(b)(2) and the Loan

12  Guarantee.

13  23.    Negligent servicing is the failure to perform those actions that would be

14  considered normal industry standards of loan management or failure to comply with any

15  servicing requirement of the lender's agreement or the guarantee.  The term includes

16  failure to act or failure to act in a timely manner or acting in a manner contrary to the

17  manner consistent with actions of a reasonable lender in loan making, servicing, and

18  collection.  7 C.F.R. §§ 761.2 and 762.102; Loan Guarantee.

19  24.    The Lender must provide the FSA with extensive records, documentation and

20  explanations to substantiate the use of loan funds, an accounting of the disposition of

21  the loan security and its proceeds, a thorough loan ledger, along with any other

22  documentation as may be requested by the FSA in addition to the loss claim form. 7

23  C.F.R. § 762.149(i)(4)

24  25.    The FSA is charged with performing an audit of those records and explanations

25  to determine the propriety of any loss payment. 7 C.F.R. §762.149(i).

26

26.    The Lender can only be treated as having sustained a loss from a compromise, adjustment, reduction, or charge-off of debts or claims if they have obtained the prior written approval of the USDA. 7 U.S.C. § 2005(b)(1), 7 C.F.R. §§ 762.145, 762.149(a).

27.    The agency **will reduce** a final loss claim based on its calculation of the dollar amount of loss caused by the lender's negligent servicing. 7 C.F.R. § 762.149(i)(6) (emphasis added).

28.    The USDA National Appeals Division has held:

> "While the Agency has a duty to review the loss claims, its motivation for scrutinizing loss claims is diminished if it believes it can recover whatever is paid to the lender from the borrower."  *See In the Matter of XXXXX*, NAD Case No. 2015W000082, Director Review, September 11, 2015.

29.    The Agency may only make a final loss claim payment once final disposition of all security and collateral proceeds have been accurately determined. 7 C.F.R. § 762.149(i)

30.    Furthermore, the Agency is only authorized to make final loss claim payments "upon account of **the outstanding liabilities** of the loan borrower". 7 C.F.R. § 762.149(m) (emphasis added).

## FACTUAL ALLEGATIONS

31.    Plaintiffs Charles E. Ortiz and Susan T. Ortiz were beginning farmers in and around, Scio, Linn County, Oregon. The Ortiz conducted farm business as a sole proprietorship; the business operated in the names of Charles Ortiz, and the assumed business name, Dirt Brothers Farms.

32.    The Ortiz had an ongoing banking and lending relationship with the lender, Washington Mutual Bank[1], (herein "the Bank") for the farm business.

---

[1] Washington Mutual Bank, N.A. doing business as Western Bank, until 2001. On September 25, 2008 Washington Mutual Bank failed, was seized by FDIC and all of the assets were sold to JPMorgan Chase Bank.

**33.    The FSA Loan Guarantee**

34.    On November 15, 2002, the Ortiz filed an application with FSA to guarantee a

$215,000 line of credit from Washington Mutual Bank, the Bank, to finance the 2003

farm operating expenses at the local USDA - FSA office in Tangent, Oregon

35.    To qualify for an FSA guarantee, the Ortiz signed an Application for Guarantee

on November 15, 2002.     The Application included a section labeled Federal Debt, that

said:

> The loan applicant certifies and acknowledges that any amounts paid by FSA on
>
> account of the *liabilities* of the guaranteed loan borrower will constitute a Federal
>
> debt owing to FSA by the guaranteed loan borrower. In such case, FSA may use
>
> all remedies available to it, including offset under the Debt Collection
>
> Improvement Act, to collect the debt from the borrower. (Emphasis added).

36.    This is the only application for guarantee that was signed.

37.    The Ortiz Application for Guarantee contains no independent right of collection

by the Agency.  It is an important distinction that the Application for Guarantee and Loan

Guarantee contract in this matter occurred prior to the Agency's attempt to extend their

reach by including, in later Application for Guarantee forms, the language: "The

Agency's right to collect is independent of the lender's right to collect under the

guaranteed note and will not be affected by any release by the lender of my (our)

obligation to repay the loan.  Any Agency collection under this paragraph will not be

shared with the lender."

38.    There were no written modifications of the Ortiz Application for Guarantee.

39.    It is an absolute right of the Ortiz that they may enforce upon the rules and

regulations existing at the time of their Application for Guarantee to the FSA.

40.    The Application for Guarantee was processed at the local USDA - FSA office in

Tangent, Oregon. Subsequently, the FSA issued a Conditional Commitment to

1  guarantee the $215,000 revolving line of credit for annual operating farm expenses,

2  which the Ortiz had to repay in full by September 5, 2003.  There were no written

3  modifications of the Conditional Commitment.

4  41.    On January 6, 2003, the Farm Service Agency, through its Service Center in

5  Tangent, Oregon, issued Form FSA 1980-27 "Loan Guarantee" for a loan in the

6  principal amount of $215,000 for the 2002 Loan dated December 6, 2002.  The line of

7  credit loan note dated December 6, 2002 in the original principal amount of $215,000,

8  had a maturity date of September 5, 2003; herein the "2002 Loan". Pursuant to the

9  requirements of the Bank and the terms of the FSA Conditional Commitment, collateral

10  security for the 2002 Loan included all farm crops, farm equipment, and accounts

11  receivable.

12  42.    The 2002 Loan matured, and was due in full, on September 3, 2003, it was then

13  restructured to reflect a deferred maturity date of October 15, 2003; the principle

14  balance on the loan at that time was $213,825.82.

15  **43.    Additional Loans in 2003**

16  44.    On or about October 15, 2003 the Bank and the Ortiz entered into a new term

17  loan, herein the "2003 Loan", in the original principal amount of $213,825.82.  The

18  Agricultural Loan Agreement for the 2003 Loan had a maturity date of September 1,

19  2004. The collateral security for the 2003 Loan included all farm crops, farm equipment,

20  and accounts receivable. The Bank made the only disbursement from the 2003 Loan[2]

21  in the amount of $213,825.82 in a transaction posted on December 31, 2003 with a

22  backdated effective date of October 15, 2003 for the purpose of settling the 2002 Loan,

23

24

---

25  [2] The Bank kept the same Lender Loan Number 0010191731-67 (Loan 67) for both the
26  2002 Loan and the 2003 Loan; the Bank loan statements/ledger reflect the initial
disbursement from the 2003 Loan and the payoff of the 2002 Loan.

1  which had come due on October 15, 2003, in the amount of $213,825.82 in principal

2  and interest.

3  45.     During the NAD Appeal process, the Agency produced an inaccurate ledger

4  which omitted the disbursement from the 2003 Loan and payment of the 2002 Loan and

5  undertook to make it appear as if the 2002 Loan and 2003 Loan were one and the same

6  loan.

7  46.     The Ortiz were issued another, subsequent new loan by the Bank; herein "Loan

8  109"; dated December 22, 2003 in the amount of $160,000.  The collateral security

9  Loan 109 was the same as the 2003 Loan, and included all farm crops, farm equipment,

10 and accounts receivable.

11 47.     The 2003 Loan and Loan 109 were restructured twice more: 1) A modification of

12 the maturity date (deferral) for the period September 1, 2004 until December 30, 2004;

13 2) A modification of the maturity date (deferral) for the period February 1, 2005 until the

14 final maturity date of September 30, 2005.

15 **48.     Restructuring of a FSA Guaranteed Loan**

16 49.     On the subject of additional loans and advances the regulations are clear: an

17 SEL lender (the Bank was an SEL Lender), must not make additional loans or advances

18 without prior written approval of the Agency, 7 C.F.R. § 762.146(a)(2).

19 50.     In addition,

20     •   The operative regulation for restructuring[3] a guaranteed loan, 7 C.F.R.

21         §762.145, provides that a standard eligible lender must, *inter alia*, **obtain the**

22         **prior written approval of the agency** for all restructuring actions, and submit

23         copies of any restructured notes or lines of credit to the agency.

24

25

26 [3] Restructuring is changing the terms of a debt through rescheduling, reamortization, deferral, writedown, or a combination thereof, 7 C.F.R. § 761.2

**COMPLAINT FOR JUDICIAL REVIEW**

51.     When a guaranteed loan is restructured a modification of guarantee must be physically attached to the original guarantee.  No modification of guarantee was attached to the original guarantee as an addendum, 7 C.F.R. §762.145(b)(6)(iv).

52.     In 2003 when the Bank issued the 2003 Loan without prior FSA approval and used its disbursement to settle in full the 2002 Guaranteed Loan the loan guarantee was effectively rendered null and void.  Either all liabilities of the Borrower had been extinguished by its settlement thereby removing the basis for any loss claim payments on behalf of the Borrower or the 2003 Loan was to be considered a restructuring of the 2002 Loan, but lacking prior approval of such a restructuring action Loan 2003 and its associated indebtedness could no longer covered by the Loan Guarantee.  An action from which there is no regulatory recovery short of issuing a new guarantee.  No new Guarantee was ever issued.

53.     As such the Ortiz ceased to be a guaranteed loan Borrower[4].

54.     The FSA has conceded that it had never approved any loan restructuring and that Bank had not sought nor received any approval written or otherwise for any loan restructuring(s) of the 2002 Loan or for any additional non-guaranteed loans, "The request for guarantee was approved; and <u>there were no requests for loan servicing, such as subordination, partial release, additional advance, or loan restructure.</u>" (emphasis added). *In the Matter of Ortiz v. Farm Service Agency,* NAD Case No. 2014W000070, Agency Post-Hearing, Exhibit 2, page 2, dated February 28, 2014 submitted by Donna L. Sprenkle.

---

[4] Borrower (or debtor) is an individual or entity that has an outstanding obligation to the Agency or to a lender under any direct or guaranteed FLP loan, without regard to whether the loan has been accelerated. The term "borrower" includes all parties liable for such obligation, including collection-only borrowers, <u>except for</u> debtors whose total loans and accounts have been voluntarily or involuntarily foreclosed, sold, or conveyed, or who have been discharged of all such obligations owed to the Agency <u>or</u> guaranteed lender, 7 C.F.R. § 761.2

**COMPLAINT FOR JUDICIAL REVIEW**

1    **55.    October 20, 2005 Loan Default**

2    56.    The 2003 Loan and Loan 109 became due and payable for the final time on

3    September 30, 2005.

4    57.    On or about October 20, 2005, the Bank[56] alleged a default and filed instant

5    litigation for Action on Notes and to Foreclose Security Interests in *Washington Mutual*

6    *Bank v. Charles Ortiz and Susan Ortiz, dba Dirt Brothers Farms and Wilbur Ellis*

7    *Company,* Linn County Circuit Court, Oregon, Case No. 052618 (herein "Case No.

8    052618"), against the Ortiz and Wilbur-Ellis Company, an agricultural supplier to the

9    Ortiz. The claims entered by the Bank were:

10    •    First claim for relief: On or about October 15, 2003 the Bank loaned to

11         Charles and Susan Ortiz the original principal amount of $213,825.82

12         pursuant to the terms of an Agricultural Loan Agreement.

13    •    Second claim for relief: On or about December 22, 2003 the Bank loaned to

14         Charles and Susan Ortiz the original principal amount of $160,000 pursuant

15         to the terms of an Agricultural Loan Agreement and Promissory Note.

16    •    Third claim for relief: Foreclosure of security interests.

17    58.    Believing the Loans to be governed by the FSA Loan Guarantee, the Ortiz

18    counterclaimed against the Bank in Linn County Case No. 052618 for claims and

19    _____

20    [5] On or about October 30, 2007, the Bank was compelled by the FSA to initiate a
secondary lawsuit against the Ortiz, because the Bank (and FSA) refused to

21    acknowledge that the Bank had improperly released loan security and the proceeds
thereof, and instead attempted to conceal this fact by filing a claim of fraudulent transfer

22    in *Washington Mutual Bank v. Charles Ortiz and Susan Ortiz, husband and wife,*
*individually and dba Dirt Brothers Farms; Ortiz Family Farm, LLC; and Ortiz Family*

23    *Revocable Trust*, Linn County Circuit Court, Oregon, Case No. 073049 (herein "Case
No. 073049")

24    [6]   On September 25, 2008 Washington Mutual Bank failed, was seized by FDIC and all
of the assets were sold to JPMorgan Chase Bank. Subsequently, JPMorgan Chase

25    Bank substituted for Washington Mutual Bank as real party in interest and accepted all
claims and liabilities in the litigation between the Bank and the Ortiz, Linn County Case

26    Nos. 052618 and 073049.

1  affirmative defenses, including but not limited to breach of contract, negligence, failure

2  to account, accounting, failure to provide documentation (proof of claim), intentional

3  interference with a business relationship, violations of the Oregon Uniform Commercial

4  Code, fraud, failure to properly apply funds remitted, failure to mitigate damages, and

5  unclean hands.

6  **59.    FSA  Affidavit of Patrick Joerger**

7  60.    On or about March 26, 2007, the FSA, without service of a subpoena, openly

8  entered the litigation between the Bank and the Ortiz, with the "Affidavit of Patrick

9  Joerger in Support of Plaintiff Washington Mutual Bank's Motion for Summary

10  Judgment". FSA personnel, including the Lynn Voigt (FSA Oregon State Executive

11  Director) and the Office of General Counsel, approved the affidavit and entry into the

12  litigation.

13  61.    The USDA regulations require that an affidavit, without service of a subpoena,

14  can only be authorized based on the determination that the appearance is in the interest

15  of USDA, and that it would not result in the improperly favoring of one litigant over

16  another, 7 C.F.R. § 1.215.

17  62.    By this time FSA were, or should have been, fully aware of three key facts that

18  had irrevocably impinged the Bank's ability to make a demand on the Loan Guarantee,

19  1) the guaranteed 2002 Loan had been paid in full, 2) additional loans had been made

20  without prior Agency authorization, and 3) negligent servicing of the security for the

21  guaranteed loan had occurred.  Any assertion by FSA that it was the interest of USDA

22  to enter the affidavit lacks credibility.

23  63.    The entry of the FSA into the litigation created unnecessary complications and

24  prolonged the litigation, slowing it to a crawl. The FSA affidavit lent false credibility to

25  the fallacy that the 2003 Loan Note restructuring the 2002 Loan was authorized by the

26  FSA, that the Bank was not negligent in servicing the loan(s), and was in good standing

1  in relation to the FSA Loan Guarantee.  Furthermore, the FSA affidavit introduced a

2  devastating bias against the Ortiz throughout the litigation and clearly was designed to

3  negate, defeat and mute the Ortiz affirmative defenses and counter-claims in Linn

4  County Court, including the Ortiz claims of Bank negligence in relation to the FSA Loan

5  Guarantee.

6  **64.    Final Agency Determination Terminating the Loan Guarantee**

7  65.    On August 24, 2010, the FSA issued a Final Administrative Determination to the

8  Bank terminating the Loan Guarantee and demanding repayment of an estimated loss

9  claim payment the Bank had received in August of 2008.  The Determination found that

10  the Bank's continued "inactivity to liquidate the remaining collateral, negligent servicing,

11  lack of required reporting, and failure to submit a final loss claim in a timely manner." It

12  established the Bank's responsibility for the estimated loss claim payment and liability to

13  the United States for repayment of the full amount. Such action is in accordance with 7

14  C.F.R. § 11 and 7 C.F.R. § 780 and authorized by Congress under 7 U.S.C. § 6991 *et*

15  *seq.*  The FSA's August 24, 2010 letter is attached hereto, in entirety, as "Exhibit B."

16  66.    A decision that is otherwise final shall remain final unless the decision is timely

17  appealed; an appeal is considered timely when filed no later than 30 calendar days from

18  the date a participant receives written notice of the decision, 7 C.F.R. §780.15(c) and 7

19  C.F.R. §11.6.

20  67.    There is no dispute that FSA provided the Bank with adequate notice and

21  opportunity to appeal the decision in a timely manner, and the Bank failed to file an

22  appeal within the time allowed by law.  There is no record of any appeal as required by

23  regulation ever having been filed.

24  68.    Regulation requires FSA to implement such decisions no later than 30 calendar

25  days after an agency decision becomes a final administrative decision of USDA. 7

26  C.F.R. § 780.16. *See also* 7 C.F.R. §11 and 7 U.S.C. § 7000(a).

1   69.    The Loan Guarantee was terminated in accordance with the laws of United

2   States on August 24, 2010 and became a Final Determination in accordance with 7

3   C.F.R. Part 11 and Part 780.

4   **70.    Ortiz and Bank Settlement Agreement with General Judgment of Dismissal**

5   **with Prejudice**

6   71.    In a letter dated October 22, 2010 the Bank made an offer to the Ortiz to settle

7   the disputed loans or enter mediation to negotiate a settlement of the litigation. Prior to

8   entering negotiations, the Bank confirmed to the Ortiz that they had waived their right to

9   timely appeal the FSA's Final Determination dated August 24, 2010.

10  72.    The Ortiz in good faith entered settlement negotiations with the Bank acting in

11  reliance of the facts and information before them.

12  73.    On November 16, 2010, the Ortiz and the Bank negotiated a settlement

13  agreement in open court proceedings before the Honorable Judge John McCormick, in

14  The Circuit Court of The State of Oregon for the County of Linn, in Albany, Oregon,

15  counsel(s) for the Bank, Constance Kuenke agent of the Bank, Charles Ortiz and Susan

16  Ortiz,  and with the Honorable Judge Lyle Velure, as mediator, the parties entered their

17  settlement agreement for Linn County Case Nos. 052618 and 073049 on the record  "to

18  compromise, settle and terminate all claims and disputes between them."

19  74.    Under the terms of the Settlement Agreement entered into by the Ortiz with the

20  Bank, the Bank agreed to accept release, discharge, and payment of $75,000:

21          "In consideration of the mutual covenants contained herein, Chase and Ortiz

22          hereby fully and forever mutually release and discharge one another and their

23          respective successors, assigns, parents, subsidiaries, employees, and related

24          entities from any and all claims, demands, liabilities, actions, causes of action,

25          suits, counterclaims, attorneys' fees, and controversies whether based in tort,

26          contract, or statute relating to the subject matter of this Agreement, including, but

1    not limited to, those claims, demands, liabilities, actions, causes of action, suits,

2    counterclaims, attorneys' fees, and controversies arising out of the Agricultural

3    Loan Agreements, Agricultural Security Agreements, Promissory Notes for Loan

4    67 and Loan 109, and the FSA Guarantee for Loan 67 on or before the date of

5    execution of this Agreement."

6  A copy of the Settlement Agreement is attached hereto as "Exhibit C".

7  75.    On or about December 20, 2010, the agreed-upon cash payment was made to

8  the Bank, satisfying the conditions of the Settlement Agreement, subsequently, Linn

9  County Case Nos. 052618 and 073049 were dismissed with a Stipulated Motion for

10  General Judgment of Dismissal with Prejudice by order of a General Judgment of

11  Dismissal, signed and entered by the court on January 20, 2011.

12  76.    The terms of the settlement having been fulfilled and the Bank having accepted

13  payment in full satisfaction of the loans and discharging the settling parties from all

14  liabilities, the Ortiz had no outstanding obligations or liabilities on any loans made to

15  them by the Bank or in any other related matter.

16  77.    The regulations speak clearly about the effect this settlement agreement had on

17  the Banks's rights to a loss claim:

18       •  Pursuant to 7 U.S.C. § 2005(b)(1) the Lender can only be treated as having

19          sustained a loss from a compromise, adjustment, reduction, or charge-off of

20          debts or claims if they have obtained the prior written approval of the USDA.

21          See also 7 C.F.R. §§ 762.145, 762.149(a).

22  78.    During the appeals proceedings, the Agency testified on the record and in writing

23  that "FSA was neither a party to, nor consented to, said settlement agreement."  *In the*

24  *Matter of Ortiz v. Farm Service Agency*, NAD Case No. 2014W000070, Agency Record,

25  page 8, dated December 30, 2013 submitted by Donna L. Sprenkle.

26

**79.    FSA Demand for Payment, Notice of Intent to Collect by Administrative Offset**

80.    On November 13, 2013, FSA issued and transmitted to the Ortiz a letter informing them that they had incurred a Federal debt in the amount of $83,003.88, plus interest, for a loss claim payment arising from a Final Loss Claim submitted by the Bank on or about June 30, 2013 in relation to a $215,000 Loan dated December 6, 2002 from lender Washington Mutual Bank / JPMorgan Chase Bank, N.A. The Ortiz received the letter and prepared a response.   A copy of the notice is attached hereto as "Exhibit D".

81.    The Agency action seeks to establish a claim against the Ortiz based upon a Loan Note that was settled in 2003, upon which no further advances were made, whose liabilities were fully and finally extinguished by the universal and binding settlement agreement reached between the Ortiz and the Bank on November 16, 2010, and based on a Loan Guarantee that had been irrevocably terminated by the Agency in August of 2010.

82.    The espoused loan upon which the FSA seeks to collect is the 2002 Guaranteed Loan Note in the amount of $215,000.   The 2002 Guaranteed Loan note was settled by the 2003 Loan issued by the Bank on December 31, 2003.  The 2003 Loan restructured the outstanding loan balance from the Guaranteed 2002 Loan Note to a new term note. The 2003 Loan Note was never guaranteed, nor were any other subsequent loans.  No additional advances were ever made on the 2002 Loan Note.

83.    Because the 2002 Guaranteed Loan became void in 2003 so too did the Guarantee itself.  As the Ortiz no longer were a guaranteed loan borrower, nor were there any outstanding liabilities on a Guaranteed Loan. The FSA lacked the underlying legal authority to bring their administrative action against the Ortiz.

84.     The Agency may establish a Federal debt only on payments made on account of liabilities of a guaranteed loan borrower; where no liabilities exist no Federal debt may be established, 7 C.F.R. § 762.149(m).

85.     The FSA has conceded that it had never approved any loan restructuring and that Bank had not sought nor received any approval written or otherwise for any loan restructuring(s) of the 2002 Loan or for any additional non-guaranteed loans, "The request for guarantee was approved; and there were no requests for loan servicing, such as subordination, partial release, additional advance, or loan restructure." (emphasis added) *In the Matter of Ortiz v. Farm Service Agency,* NAD Case No. 2014W000070, Agency Post-Hearing, Exhibit 2, page 2, dated February 28, 2014 submitted by Donna L. Sprenkle.

86.     The FSA has failed to provide any statutory authority that authorizes them to make a loss claim payment on a non-guaranteed loan and the FSA lacks the authority to establish a Federal Debt for payments made on behalf of a loss claim arising from a non-guaranteed loan.

**87.    NAD Appeal**

88.     On December 10, 2013, the Ortiz appealed the FSA decision to establish a federal debt against the Ortiz for the loss claim payment, their appeal included a dispute of the underlying determinations and the propriety thereof to the National Appeals Division of the U.S.D.A (NAD) and requested a hearing; *In the Matter of Ortiz v. Farm Service Agency,* NAD Case No. 2014W000070.

89.     Throughout the NAD appeals process, the FSA submitted that the issues under NAD appeal are limited to the fact that FSA paid a loss claim and therefore once paid the Ortiz were liable to the FSA for the payment[7] regardless of the underlying

---

[7] Reduced to its core, the Agency's position was that NAD's role is merely to confirm that the amount claimed by the Agency as the debt due is the same amount paid to the Bank on a Final Loss Claim.

1  regulations  and facts.  Time and again the Ortiz disputed this and argued that NAD was

2  obligated to examine the underlying issues. The NAD refused to consider whether the

3  actions taken by the FSA in determining the propriety of the claim were justified by law

4  or substantive evidence or whether FSA even had standing to take such actions. Both

5  FSA and NAD refused to consider whether the payment and subsequent demand on

6  the Ortiz was supported by fact or law.

7  90.    On February 11, 2014, an in-person hearing was conducted before a Hearing

8  Officer with the NAD.

9  91.    During the appeal, the Ortiz raised and specifically identified several underlying

10  deficiencies any of which barred the Agency's decision, among them:

11  **92.    FSA Terminated the Loan Guarantee**

12  93.    The Ortiz brought forth the Final Determination of the FSA, dated August 24,

13  2010, terminating the Loan Guarantee and cited the relevant statutory authorities. This

14  Final Determination has the force of law and precludes the USDA from standing to bring

15  forth a claim against the Ortiz.  This determination rendered the Loan Guarantee

16  unenforceable per the Conditions of Guarantee and in accordance with 7 C.F.R.

17  §762.101 and 103.

18  94.    The FSA, Final Administrative Determination of August 24, 2010, terminated the

19  Loan Guarantee and demanded the Bank repayment of the estimated loss claim; this

20  action is in accordance with 7 C.F.R. §11 and 7 C.F.R. §780 and authorized by

21  Congress under 7 U.S.C. § 6991 *et seq.*   *See* Exhibit B.

22  95.    The Loan Guarantee states "The guarantee will terminate automatically …

23  (c) upon denial of the lender's claim and expiration of appeal rights…." *See also*, 7

24  C.F.R. § 762.101

25  96.    A decision that is otherwise final shall remain final unless the decision is timely

26  appealed; an appeal is considered timely when filed no later than 30 calendar days from

1    the date a participant receives written notice of the decision, 7 C.F.R. § 780.15(c) and 7

2    C.F.R. § 11.6.

3    97.    There is no dispute that FSA provided the Bank with adequate notice and

4    opportunity to appeal the decision in a timely manner, and the Bank failed to file an

5    appeal within the time allowed by law.

6    98.    The FSA is mandated to implement the decision no later than 30 calendar days

7    after an agency decision becomes a final administrative decision of USDA. 7 C.F.R. §

8    780.16. *See also* 7 C.F.R. §11 and 7 U.S.C. § 7000(a).

9    99.    The Farm Service Agency was mandated to pursue collection against the Bank:

10        • The USDA is mandated to aggressively seek repayment from the lender

11            under 7 C.F.R. § 3.10 and the Debt Collection Improvement Act, 31 U.S.C. §

12            3701 *et seq.*

13        • The Debt Collection Improvement Act further contemplates that if USDA

14            [FSA] debt-collection efforts remain unsuccessful for a period of 180 days,

15            Treasury will assume the debt-collection responsibilities, 31 U.S.C. §

16            3711(g)(1); *see also* 31 U.S.C. § 3716(c)(6) (requiring that agencies notify

17            Treasury of past-due, legally enforceable debts over 180-days delinquent for

18            administrative offsets).

19    100.    The USDA terminated the Loan Guarantee in accordance with the laws of United

20    States on August 24, 2010 and it became a Final Determination in accordance with 7

21    C.F.R. §§ 11 and 780.

22    101.    The Ortiz raised the very issue of how a loss claim payment arising from a

23    terminated loan guarantee for which there were no longer any remaining liabilities be

24    made on their behalf?  USDA simply has no statutory authority to take such action.

25    102.    The NAD refused to even consider the issue.

26    **103.    The Ortiz Had No Liabilities to the Bank or FSA**

104.   The Application for Guarantee signed by the Ortiz unambiguously states "The loan applicant certifies and acknowledges that any amounts paid by FSA on account of the <u>liabilities</u> of the guaranteed loan borrower will constitute a federal debt owing to FSA by the guaranteed loan borrower."  7 C.F.R. §762.149(m). *See also* definition of "Borrower" at 7 C.F.R. §761.2(b).

105.   7 C.F.R. 762.149(m), the espoused basis for FSA's decision to assess the Ortiz with a Federal debt, provides that a Federal debt is incurred only when the FSA makes a payment on account of a guaranteed loan borrower's <u>liabilities</u>.

106.   The evidence proffered by the Ortiz in the NAD appeal proceedings indisputably established that at the time FSA made its final loss claim payment to the Bank, the Ortiz were no longer Guaranteed Loan Borrowers nor were there any outstanding liabilities as regards to any Guaranteed Loans.

107.   As a result of the settlement agreement with the Bank, the Ortiz were neither a "borrower" as defined by the controlling regulations nor did they have any liabilities to the Bank or the FSA.  Pursuant to 7 C.F.R. 762.149 (m), since no liabilities existed between the Bank and the Ortiz, no Federal debt was created by the Bank's Final Loss Claim.

108.   Owing to its failure to receive prior written authorization, any loss suffered by the Bank was barred from loss claim payment.

109.   FSA offered no evidence to the contrary.

110.   The NAD refused to consider the issue and refused to examine the Ortiz claim that they no longer had liabilities upon which to base a loss claim payment or create a Federal debt.

**111.   The FSA Loss Claim payment was time barred**

112.   Relating to the timeliness of submitting a loss claim:

- 7 C.F.R. § 762.149(d), requires an estimated loss claim be submitted by all lenders no later than 150 days after the payment due date unless the account has been completely liquidated and then a final loss claim must be filed.

113.    The Agency guidance provides that liquidation will be completed within 230 days after the borrower was declared in default, unless otherwise approved in the liquidation plan, and a final loss claim submitted within 290 days after the final payment due date on the guaranteed loan and within 30 calendar days of the completion of liquidation.  2-FLP Handbook at Para. 355 (H).  A final loss claim will be reduced if there are unjustified delays in liquidation or submission of a claim. 2-FLP Handbook at Para. 355 (I).  *see In the Matter of XXXX v. Farm Service Agency,* NAD Case No. 2010W000434R Director Review dated May 18, 2011.

114.    The authorized agency official shall monitor liquidations and request a loss claim when they are aware that an account has been liquidated. A final loss claim will be reduced if there are unjustified delays in liquidation or submission of a claim. 2 FLP Handbook para 355I.

115.    The FSA approved an estimated Guaranteed Loan Report of Loss ("loss claim") on August 8, 2008, in the amount of $101,075.24.

116.    The FSA subsequently terminated the Loan Guarantee on August 24, 2010 via Final Administrative Determination and demanded repayment of the estimated loss claim by the Bank. The Agency willfully failed to pursue collection from the Bank in completed disregard for laws and regulations.

117.    In a highly irregular action in 2013 the Agency, after terminating the Loan Guarantee but taking no action to recover the loss claim payment, solicited from the Bank and later accepted a second Loss Claim for the terminated Loan Guarantee, almost a full three years after the termination of the Loan Guarantee and more than two

**COMPLAINT FOR JUDICIAL REVIEW**

1  years after the Ortiz had ceased to be a borrower of the Bank and no longer had any

2  applicable liabilities.

3  118.    On July 26, 2013, the Agency approved a final Guaranteed Loan Report of Loss

4  ("loss claim") in the amount of $83,003.88.

5  119.    Agency guidance and regulations do not contemplate delayed action in the

6  liquidation process or submission of claim(s) by either the Bank or the FSA.  Nor do

7  they envision the Agency soliciting a loss claim from a Lender for a terminated Loan

8  Guarantee.

9  120.    Agency rights expired long ago and the Agency had no legal foundation for

10  accepting the loss claim from the Bank; as such, the Agency with no independent right

11  of action and having failed to adhere to the regulations requiring the Agency to forward

12  the debt collection to the U.S. Treasury, sought out the Bank to pursue this illegal

13  punitive action against the Ortiz.  The Agency has no legal justification for their actions.

14  121.    The protracted timeframe which the FSA sanctioned in this matter and their

15  actions herein are in complete disregard to the laws, regulations, and agency guidance.

16  122.    The FSA provided no statutory authority or evidence to support their actions in

17  issuing a Guaranteed Loan Report of Loss three years after a party ceased to be a

18  borrower and there were no liabilities.

19  123.    When confronted with this issue on appeal the NAD contracted their authority

20  and refused to consider the issue.

21  **124.    The $75,000 Payment**

22  125.    The Settlement Agreement between the Ortiz and the Bank included a onetime

23  payment of $75,000 made by the Ortiz to the Bank in full satisfaction of the outstanding

24  dispute.

25  126.    FSA was aware of the payment; however, the FSA failed to apply the $75,000 in

26  accordance with the regulations when they calculated the loss claim upon which the

1  demand for repayment is based.  Regulation requires that priority be given to the

2  guaranteed loan for any such payments received by the lender and that any such

3  payments are to be deducted from a claim for loss.

4  127.   7 C.F.R. § 762.149(f) Unapproved loans or advances. The amount of any

5  payments made by the borrower on unapproved loans or advances outside of the

6  guarantee will be deducted from any loss claim submitted by the lender on the

7  guaranteed loan, if that loan or advance was paid prior to, and to the detriment of, the

8  guaranteed loan. *See also* 7 C.F.R. § 762.140(d).

9  128.   During the appeals process the Ortiz brought forward substantive and material

10  evidence representing that the $75,000 payment had not been applied to the

11  outstanding balance of the Guaranteed Loan nor had they been deducted from the loss

12  claim calculations as required.

13  129.   FSA improperly departed or disregarded the laws and regulations which

14  requirement the deduction of the $75,000 payment to an unapproved and non-

15  guaranteed from the loss claim submitted by the Bank.

16  130.   The NAD determinations completely disregarded the payment.

17  **131.   Machinery and Equipment Chattel security**

18  132.   Machinery and Equipment (chattel) served as collateral for the Guaranteed Loan;

19  the Bank and FSA established a value of this collateral to be $110,500 in 2002. All

20  chattel security was accounted for on December 27, 2005 by an agent of the Bank.

21  133.   The Bank took no action to secure or liquidate the chattel collateral. A minor

22  amount of the chattel collateral was sold with proceeds applied to the loan balance.

23  134.   A lender is responsible for servicing the guaranteed loan in a reasonable and

24  prudent manner, protecting and accounting for the loan collateral, and remaining the

25  mortgagee or secured party of record. See 7 C.F.R. § 762.140(a)(1). The Agency will

26  not pay the lender for any loss until after the collateral is liquidated, 7 CFR 762.149(c).

135.    The Bank failed to ensure that loan collateral was protected and failed to liquidate the machinery and equipment collateral (chattel) for the loan, the failure to take these actions, and to do so in a timely manner, was to the direct detriment of the guaranteed loan.

136.    FSA improperly departed or disregarded the laws and regulations when it allowed the Bank to submit a final loss claim without liquidating the chattel; and further erred when they failed to deduct the value of the chattel in accordance with the regulations from the loss claim submitted by the Bank.

137.    The NAD determinations disregarded the machinery and equipment chattel security.

**138.    Crop Security Proceeds**

139.    The USDA has determined that the unauthorized release of crop proceeds is negligent servicing, monies lost by negligent servicing are not eligible for loss claim payment, and FSA is required to deduct the amount from the loss claim submitted by the Bank.

- The Bank is required under 7 C.F.R. § 762.142(a)(5) to ensure that the proceeds from the sale of collateral (in this case, Borrower's crops) are appropriately accounted for and that those proceeds are "applied in accordance with the lien priorities on which the guarantee is based."  Failure to do this constitutes a failure to act consistently with the actions of a reasonable lender in loan making, servicing, and collecting, and, therefore, such action is considered negligent servicing. *In the Matter of XXXX v. Farm Service Agency*, NAD Case No. 2007S000837 Director Review Determination dated July 7, 2008; also *In the Matter of XXXX v. Farm Service Agency,* NAD Case No.2017E000383 Appeal Determination dated August 2, 2017.

**COMPLAINT FOR JUDICIAL REVIEW**

- Allowing the borrower to "operate out the checking account" is negligent servicing to the detriment of the loan and the FSA will deduct for it from lender's claim, e.g. "Much of the guaranteed losses were a direct result of appellant's [the lender's] practice of letting borrowers operating from their checking account without directly applying collateral sale proceeds according to lien priorities and then re-advancing funds under the LOC [line-of-credit] to pay operating expenses". *In the Matter of XXXX v. Farm Service Agency,* NAD Case No. 2005W000749, Director Review Determination dated October 16, 2006; *The Guarantee State Bank (Joe Bob Babek) v. Farm Service Agency*, No. 02-6127, 10th Circuit Court of Appeals (June 4, 2003).

140.    A final loss claim may only be submitted when the security has been liquidated and all proceeds have been received and applied to the account, 7 C.F.R. § 762.149(i).

141.    A loan guarantee may not be enforced by a lender to the extent the loss results from negligent servicing, failure to obtain the required security, or failure to use loan funds for purposes specifically approved by the Agency, <u>regardless of when the Agency acquires knowledge of the foregoing</u>.  7 C.F.R.  § 762.103(b)(2) and the Loan Guarantee. (emphasis added)

142.    As a condition of the Ortiz Loan Guarantee the Bank agreed to obtain and maintain first lien priority all crop proceeds payments for the 2003, 2004 and 2005 crops; the Bank was required per the terms of the Conditional Commitment to Guarantee to maintain first lien position.

143.    In addition, 7 C.F.R. § 762.142(b)(1) forbids the release of collateral in the process of servicing a loan without prior FSA concurrence unless it is sold for market value with the proceeds applied to the loan, traded for comparable collateral, or has no value.

144.    During the appeals process the Ortiz brought forward substantive and material evidence representing negligent servicing that proceeds had not been applied to the outstanding balance of the Guaranteed Loan nor had they been deducted from the loss claim calculations as required.

145.    The Bank received $222,686.27 in proceeds payments from the sale of the 2003, 2004 and 2005 crop security.

146.    From those payments, the Bank applied[8] $42,734.44 to the 2003 Loan; the remaining[9] $179,951.83 was not applied to any loan and was released by the Bank to the Ortiz and their supplier(s).  The collateral releases were not approved by FSA.

147.    The Bank's release of $179,951.83 in crop security payments that served as loan collateral without the approval of FSA is a violation of FSA's regulations and a direct material cause of the alleged loss on the loan.

148.    The Ortiz brought forward substantial and material evidence of the negligent servicing and cited the relevant regulations regarding these actions during the appeal process. The evidence included copies of the checks, check stubs, settlement sheets, and/or bank statements to evidence the deposits of the crop proceeds into the Ortiz business bank account at Washington Mutual Bank, the majority of which listed Washington Mutual Bank as a payee, which the Bank subsequently released without applying to the Guaranteed Loan.

149.    FSA produced no evidence to the contrary nor could they account for where these had been a part of the loss claim calculation.

150.    FSA improperly departed or disregarded the laws and regulations which requirement the deduction of $179,951.83 in crop proceeds payments from the loss claim submitted by the Bank.

---

[8] $35,050.14 prior to litigation, and the $7,684.30 during the course of litigation

[9] $152,546.38 prior to litigation, and the $27,405.45 during the course of litigation

**COMPLAINT FOR JUDICIAL REVIEW**

**151.    NAD Jurisdiction**

152.    Congress established NAD's jurisdiction which is codified at 7 United States

Code (U.S.C.) § 6991 et seq.  The regulations found at Title 7, Part 11 of the Code of

Federal Regulations (C.F.R.) implement the NAD statute.

153.    The NAD authorities and duties as set forth by the Congress of the US are

unambiguous:

154.    The NAD is tasked with ensuring that any determination is consistent with the

laws and regulations of the agency, and with generally applicable interpretations of such

laws and regulations. 7 U.S. Code § 6998(c), 7 C.F.R. §11.10(b).

155.    "A participant shall have the right to appeal an adverse decision to [NAD] for an

evidentiary hearing by a hearing officer" if he requests a hearing within 30 days of

receipt of the adverse decision.  7 U.S.C. § 6996.

156.    The NAD statutes require that all FSA adverse determinations be appealable to

NAD.  The Supreme Court recently held that an administrative agency is not entitled to

contract its own jurisdiction by regulations or by decisions in litigated proceedings.

*Union Pacific Railroad Co. v. Brotherhood of Locomotive Engineers and Trainmen*

*General Committee of Adjustment*, U.S., 130 S.Ct. 584 (2009).  See also *In the Matter*

*of XXXX,* NAD case No. 2012E000136 dated November 16, 2012 - Reconsideration

Director Review Determination.

157.    Additionally, the Agency's guaranteed loan program is subject to the Equal Credit

Opportunity Act under 15 U.S.C. § 1691 et. seq.  as promulgated under 12 C.F.R. §202

(Regulation B); the regulations thereunder are also applicable to this matter [AR pages

6 and 11].  The definition of adverse decision under 15 U.S.C. §1691(d)(6) is applicable

to this determination;  the term "adverse action" means a denial or revocation of credit,

a change in the terms of an existing credit arrangement, or a refusal to grant credit in

substantially the amount or on substantially the terms requested.  The Ortiz have

1  standing to bring these matters for adjudication. *Lujan v. Defenders of Wildlife*, 504 U.S.
2  555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)

3  **158.   Failure to Notice**

4  159.   FSA's failed to provide notice of its adverse decisions leading up to the letter of
5  November 13, 2013.

6  160.   7 U.S.C. §6994. Notice and opportunity for hearing. Not later than 10 working
7  days after an adverse decision is made that affects the participant, the Secretary shall
8  provide the participant with written notice of such adverse decision and the rights
9  available to the participant under this subchapter or other law for the review of such
10  adverse decision.

11  161.   Whether FSA provides notice to a participant of an adverse decision does not
12  affect NAD's jurisdiction; an adverse decision includes the failure of an agency to issue
13  a decision, 7 U.S.C. § 6991 (1) and 7 C.F.R. § 11.1. See *In the Matter of XXXX,* NAD
14  case No. 2012E000136 dated November 16, 2012 - Reconsideration Director Review
15  Determination.

16  162.   The failure of the Agency to provide notice(s) to the Ortiz of the numerous
17  adverse actions taken on the Ortiz Loan Guarantee account, does not excuse the
18  Agency's actions, nor can NAD contract its jurisdiction for the Agency's failure to
19  provide notice.

20  163.   Not only did NAD have a binding obligation to consider all underlying adverse
21  decisions presented to them by the Ortiz; the Ortiz had a right to have these adverse
22  decisions heard by the NAD.

23  **164.   The Ortiz Appeals are Specific**

24  165.    The appeals brought forth by the Ortiz were not of general applicability; rather
25  each was based on a specific action of the Agency regarding the Ortiz Loan Guarantee
26

1  that have resulted in the issuance of a Notice of Intent to Offset and establish a Federal
2  debt against the Ortiz in the amount of $83,003.88.

3  **166.**    The Ortiz appeals do not question the Agency's authority to regulate its farm loan
4  program; rather they questioned the Agency's authority to largely ignore their own
5  regulations when making decisions that directly affect the Ortiz.

6  **167.    The NAD Decision and Director Review Appeal**

7  168.    On March 28, 2014, the NAD issued a Determination upholding the FSA's
8  adverse decision; the NAD Hearing Officer limited the decision to "the agency's decision
9  to initiate an administrative offset, not what steps FSA and/or the Lender undertook to
10  service the guaranteed loan" and found that "FSA did pay lender's loss claim as the
11  result of a guaranteed loan and FSA may demand Appellant to repay such amount." A
12  copy of the NAD Hearing Officer Determination is attached hereto as "Exhibit E".

13  169.    On May 2, 2014, the Ortiz requested NAD Director Review of the Hearing
14  Officer's determination, and submitted supplemental briefing reiterating their arguments
15  and requesting supplemental findings of fact.

16  170.    On June 2, 2014, the NAD Deputy Director, James T. Murray, issued a Director
17  Review Determination ("Determination") affirming the March 28, 2014 determination and
18  the FSA's original adverse decision; the Director Review limited the decision stating:

19      "[T]he adverse decision concerns Agency's decision to initiate an administrative
20          offset, not what steps Agency, Lender, and Lender 2 took during the course of
21          managing the debt collection process. Neither does the adverse decision
22          concern Agency's reduction of the guaranteed loss claim due to negligent
23          servicing or Agency's authority to regulate its farm loan program."

24  A copy of the NAD Director Review Determination is attached hereto as "Exhibit A".

25  171.    On June 9, 2014, the Ortiz received the June 2, 2014 NAD Director Review
26  Determination.

172.    On June 18, 2014, the Ortiz requested Reconsideration of the NAD Director Review Determination and submitted supplemental briefing of their arguments and requesting supplemental findings of fact. On July 1, 2014 James T. Murray, NAD Deputy Director, issued a letter denying the Ortiz Request for Reconsideration.

**173.    NAD Contracted their Jurisdiction and Limited the Review of the Appeal**

174.    The NAD contracted their jurisdiction and limited the review of the Ortiz appeal to merely whether or not the Agency had a right to seek administrative offset of the debt.

175.    This adverse decision stands in stark contrast to the NAD's own findings in other cases.  The NAD found *in the Matter of XXXX v. Farm Service Agency*, NAD Case No. 2012S000522 Appeal Determination dated September 21, 2012, that the borrower had a right to appeal the Lender's negligent servicing and the failure of FSA to account for it, finding:

- "I find that Lender negligently serviced Appellant's farm loan when it failed to provide Appellant assistance, and it failed to act as a reasonable and prudent lender as 7 C.F.R. § 762.140 requires.  I also find that Lender did not ensure that proper and adequate security was obtained and maintained to fully secure the loan.  Lastly, I find that FSA's Acting State Executive Director erred in approving Lender's "loss claim" because there is no evidence in the record that the DAFP approved the decision to release the security on the loan.  See 7 C.F.R. § 762.126(h).  FSA should have refused payment on the Loan Guarantee.  I find FSA erred in its adverse decision."

- FSA did not appeal the determination.

176.    The NAD again opined the same conclusion in a similar case shortly after the Ortiz Determination; *In the Matter of XXXX v. Farm Service Agency*, NAD Case No. 2015W000082 Director Review Determination dated September 11, 2015 the NAD Director found:

- "[T]he Agency's position would deny guaranteed borrowers of any meaningful appellate review of a debt created by the Agency's payment of a final loss claim. Appellant [borrower] was not involved in the Lender's preparation of the original loss claim, Lender's settlement negotiations with the Agency regarding that claim, or the calculation of the Final Loss Claim. As such, Appellant did not have the prior opportunity to claim negligent servicing by Lender or to challenge the calculation of the Final Loss Claim. Appellant's exclusion from the review of the Final Loss Claim deprived a clearly interested party from raising arguments relevant to the propriety and amount of the Final Loss Claim. Appellant's interests were not protected during the review of the Final Loss Claim. Lender certainly had no incentive to seek deductions to its own loss claim to account for negligent servicing. While the Agency has a duty to review loss claims, its motivation for scrutinizing loss claims is diminished if it believes it can recover whatever is paid to the lender from the borrower. The Agency's inconsistent deductions in this case prove that the Agency's review was not sufficient to protect Appellant's interests."

177.   In 2016, the US District Court in the District of New Mexico affirmed the reasoning cited *In the Matter of XXXX v. Farm Service Agency*, NAD Case No. 2015W000082 Director Review Determination dated September 11, 2015, *in the matter of Edward and Martha Heimann v. United States Department of Agriculture and Farm Service Agency*, No. CV 14-757, page 16 (District of New Mexico 2016). The Court "adopt[ed] the due process reasoning found in 2015W000082, based on well-established procedural due process precedent in the United States. FSA demanded repayment of a loss claim from the [borrower] without the [borrower] having any opportunity for a hearing on the existence or amount of that loss claim. To require

**COMPLAINT FOR JUDICIAL REVIEW**

1  payment or administrative offset against the [borrower's] tax refunds would deprive the

2  [borrower] of property without due process of law."

3  178.    On this subject, the Court did not stop there; the Court further ruled;

4  179.    "The Court applies the deferential standard of review to the Director's decision.

5  See IMC Kalium Carlsbad, Inc. v. Interior Bd. of Land Appeals, 206 F.3d 1003, 1009-10

6  (10th Cir. 2000); Four B Corp. v. N.L.R.B., 163 F.3d 1177, 1182 (10th Cir. 1998). This

7  Court concludes that the NAD had jurisdiction to examine the issue of the existence and

8  amount of the loss claim, and the Director failed to address that issue in his Director

9  Review Determination." *In the matter of Edward and Martha Heimann v. United States*

10  *Department of Agriculture and Farm Service Agency*, No. CV 14-757, page 16 (District

11  of New Mexico 2016),

12  180.    The Ortiz respectfully request that the Court take notice of Memorandum Opinion

13  and Order in the matter of *Edward and Martha Heimann v. United States Department of*

14  *Agriculture and Farm Service Agency*, No. CV 14-757, (District of New Mexico 2016,

15  and have attached it hereto as "Exhibit F".

16  **181.    Harm to the Ortiz**

17  182.    The actions and determinations of the USDA have denied and/or gave pause to

18  the Ortiz the right to bring their grievances against the USDA, their right to exercise

19  freedom of speech, and the right to be free from the unwarranted bias introduced by

20  FSA into the litigation between the Ortiz and the Bank.

21  183.    The Ortiz accumulated in excess of $98,000 in legal fees and expenses and over

22  $197,000 in lost time and wages during the course of the litigation.

23  184.    Damages of no less than $75,000 from the bias introduced by FSA into the

24  litigation between the Ortiz and the Bank

25  185.    Damages from humiliation, physical and mental anguish, of an amount to be

26  determined.

**COMPLAINT FOR JUDICIAL REVIEW**

1    186.    Damages from the offset of Federal and State tax refunds which includes more

2    than $11,500 offset to date, plus interest, which have been wrongfully seized through

3    the Treasury Offset Program.

4    **187.    Conclusion**

5    188.    The Supreme Court has held that an administrative agency is not entitled to

6    contract its own jurisdiction by regulations or by decisions in litigated proceedings.

7    *Union Pacific Railroad Co. v. Brotherhood of Locomotive Engineers and Trainmen*

8    *General Committee of Adjustment, Central Region*, 130 S.Ct. 584 (2009).  Accordingly,

9    the NAD statute requires that all FSA adverse determinations be appealable to NAD.

10    Should the FSA's position be accepted it would contract NAD's statutory jurisdiction by

11    eliminating administrative appeals when it makes a decision that is adverse to a

12    participant.  Neither the USDA nor FSA has authority to issue a regulation removing

13    these determinations from NAD's statutory jurisdiction.  Indeed, when an agency

14    attempts to do this, such a position might mislead program participants and their

15    representatives, cause undue litigation, and increase costs to farmers and the

16    government.  It is clear that NAD must adjudicate an appeal when it falls within the

17    jurisdiction Congress provided. *In the Matter of XXXX*, NAD case No. 2012E000136

18    dated November 16, 2012 - Reconsideration Director Review Determination

19    189.    The point is, the appeals of the underlying adverse decisions must be colored

20    against the regulations as applied to the Ortiz Loan Guarantee to determine the

21    propriety of those decisions prior to determining the "Issue".  To do otherwise would be

22    a failure of NAD's duty and would circumvent the intent of Congress, be inconsistent

23    with the laws and regulations, and invalidate the NAD's determination.  The NAD lacks

24    the authority to limit their jurisdiction as they have sought to herein.

25    190.    In refusing to take actions that they are mandated by Congress to take the NAD

26    is intentionally breaking the law and issuing incomplete, inconsistent, and erroneous

1  decisions.   The result of this process is that the Ortiz are being further injured by

2  agency actions and denied their rights to due process.

3  191.    The Ortiz have no obligation or liabilities under the guaranteed loan and the

4  guaranteed loan program to any party.  The USDA and its Farm Service Agency have

5  no legal standing or authority to seek repayment of any amount from the Ortiz.  The

6  USDA and its Farm Service Agency have acted illegally in this matter and are guilty of

7  discrimination and affirmative misconduct, among multiple other actions.   No

8  independent and unbiased fact finder when considering all the evidence and pertinent

9  regulations could find otherwise.

10  192.    The Ortiz having exhausted their administrative appeals and having been unable

11  to have them heard now turn to the court.

12                      COUNT I – ADMINISTRATIVE PROCEDURES ACT

13  (Denial of Right to Petition the Government for Grievances and Denial of Due Process

14  in Violation of the Administrative Procedures Act and the First and Fifth Amendments of

15                                the U.S. Constitution)

16  193.    Plaintiff repeats and incorporates herein each and every allegation contained in

17  the paragraphs above.

18  194.    The Director Review Determination and the position of the FSA are contrary to

19  constitutional right, power, privilege, or immunity in violation of the Administrative

20  Procedures Act, Section 706(2)(B) and violates the Borrowers' right to Petition the

21  Government for Grievances  contrary to the First Amendment of the U.S. Constitution

22  and the right to Due Process contrary to the Fifth Amendment of the U.S. Constitution.

23  195.    The USDA Determinations violated the Ortiz constitutional rights, including their

24  right to Petition the Government for Grievances and the right to Due Process;

25          a. It denies the Ortiz the right to petition the government for their grievances;

26          b. It holds the Ortiz liable for illegal payments made by the FSA;

1
2
    c. It denies the Ortiz all opportunity to challenge the legality of the underlying payments for which they are being held liable;

3
    d. It holds the Ortiz liable without any recourse to challenge their liability;

4
5
    e. It denies the Ortiz meaningful opportunity for notice and hearing regarding the validity of the Federal Debt.

6   196.   The USDA acted in violation of the Constitution of the United States and the

7   Administrative Procedures Act, 5 U.S.C. § 706. As such, pursuant to the Administrative

8   Procedures Act, 5 U.S.C. § 706, the Agency's actions, findings, and conclusions should

9   be held unlawful and set aside and Plaintiff should be granted declaratory and other

10  relief from such action as authorized by 5 U.S.C. § 703.

11              COUNT II – ADMINISTRATIVE PROCEDURES ACT

12          (Defendant's Decision Was In Excess of Statutory Jurisdiction,

13  Authority or Limitations and/or Short of Statutory Right, Arbitrary, Capricious, an Abuse

14      of Discretion, Not in Accordance with the Law; and/or Unwarranted by the Facts)

15  197.   Plaintiff repeats and incorporates herein each and every allegation contained in

16  the paragraphs above.

17  198.   The NAD erred in contracting their authority and limiting their determination in

18  review of the Ortiz appeals – this was short of their statutory right, arbitrary, capricious,

19  an abuse of discretion, not in accordance with the law, and unwarranted by the facts.

20  199.   NAD's review is not limited solely to whether a debtor has been properly notified

21  of debt but includes a review of the validity and propriety of the debt itself, and that the

22  right to due process requires that debtors be provided with an opportunity to obtain

23  review of an agency's predicate actions that directly lead to the creation of the debt at

24  issue. It is contrary to the constitutional right of due process to prohibit the Ortiz from the

25  right to appeal of the decisions of the agency that lead to the final administrative

26  Determination.

200.   The NAD Determination dated June 2, 2014 regarding the alleged Federal debt owing to the FSA by Plaintiff were in violation of 5 U.S.C. § 706. As such, pursuant to the Administrative Procedures Act, 5 U.S.C. § 706, the Agency's actions, findings, and conclusions should be held unlawful and set aside and Plaintiff should be granted declaratory and other relief from such action as authorized by 5 U.S.C. § 703.

COUNT III – ADMINISTRATIVE PROCEDURES ACT

**NAD Director Review Determination of the FSA decision is in Error**

(Defendant Decision Was Arbitrary, Capricious, an Abuse of Discretion, Not in Accordance with the Law; Contrary to Constitutional Right, Power, Privilege, or Immunity; and/or Unwarranted by the Facts, In Excess of Statutory Jurisdiction, Authority or Limitations and/or Short of Statutory Right, Not Based on Substantial Evidence)

201.   Plaintiff repeats and incorporates herein each and every allegation contained in the paragraphs above.

202.   The undisputed facts available to the FSA prior to issuing its adverse decision and adduced in the appeal proceedings establish that the application of 7 C.F.R. 762.149 (m) is improper in this matter. As there exists no other basis upon which FSA's adverse decision to assess Plaintiff with a Federal debt can be sustained, the Agency has failed to consider  important aspects of this matter, its explanations of its decision run counter to the evidence, its decisions run counter to the regulations, its decisions are arbitrary, and there exists no rational connection between the facts and the decision made. Accordingly, there was no reasonable basis for the FSA's adverse decision and the NAD Determination sustaining it.

**203.   No liabilities existed**

204.   7 C.F.R. §762.149(m), the espoused basis for FSA's decision to assess the Ortiz with a Federal debt, provides very specifically that a Federal debt is incurred only when

the FSA makes a payment on account of the guaranteed loan borrower's liabilities. Not when the FSA decides to make any payment regardless of rights. The evidence proffered herein and in the NAD appeal proceedings undisputedly established that at the time FSA approved the final Loss Claim for the Bank, the Ortiz were neither a "borrower" as defined by the controlling regulations no did they have any liabilities to the Bank or the FSA.  FSA offered no contrary evidence.  Pursuant to 7 C.F.R. §762.149(m), since no liabilities existed between the Bank and the plaintiffs, no Federal debt could be created.

205.    The undisputed facts available to FSA prior to issuing its adverse decision and adduced in the appeal proceeding establish that the application of 7 C.F.R. §762.149(m) is improper in this matter. As there exists no other basis upon which FSA's adverse decision to assess Plaintiff with a Federal debt can be sustained, the Agency has failed to consider important aspects of this matter, its explanations of its decisions run counter to the evidence, and there exists no rational connection between the facts and the decision made. Accordingly, there was no reasonable basis for the FSA's adverse decision and the NAD Determination sustaining it.

**206.    Error in calculating the loss claim**

207.    The FSA did not properly calculate the deductions to the loss claim necessary to address the Bank's negligent servicing, which is the sole basis for the federal debt claimed due from the Ortiz.

208.    In the following instances, individually and collectively:

- Using line-of-credit loan advances to pay for prior year's operating losses
- Release of crop proceeds security
- Applying payments to nonguaranteed loan ahead of the guaranteed loan
- Failure to account for collateral – 7 C.F.R. §762.140(a)(1), 762.142(a)
- Failure to submit reports when required 7 C.F.R. §762.141

**COMPLAINT FOR JUDICIAL REVIEW**

- Failure to limit liquidation expenses to a reasonable amount 7 C.F.R. §762.149
- Failure to submit a loss claim in a timely manner 7 C.F.R. §762.149
- Unauthorized restructuring of the loan 7 C.F.R. §762.145
- Failure to comply with applicable regulations 7 C.F.R. §761.2, 7 C.F.R. §762.103
- Failure to service the loan in a reasonable and prudent manner

209.   The USDA servicing, decisions, and adjudication of the Ortiz Loan Guarantee were inconsistent with the governing laws and regulations, and with the generally applicable interpretations of such laws and regulations, industry custom and practices, and the established law of guaranty and suretyship.

210.   It is unconscionable for the FSA to attempt to shift the responsibility for the loss that resulted from the Bank's negligent servicing of the guaranteed loan to the borrower.

211.   Defendants' adverse decision and the final administrative Determination regarding the alleged Federal debt owing to the FSA by Plaintiff were thus arbitrary, capricious, an abuse of discretion, not in accordance with the law; not based on substantial evidence; contrary to constitutional right, power, privilege, or immunity; and/or unwarranted by the facts in violation of 5 U.S.C. § 706. As such, pursuant to the Administrative Procedures Act, 5 U.S.C. § 706, the Agency's actions, findings, and conclusions should be held unlawful and set aside and Plaintiff should be granted declaratory and other relief from such action as authorized by 5 U.S.C. § 703.

COUNT IV – ADMINISTRATIVE PROCEDURES ACT

(Compel Agency Action Unlawfully Withheld or Unreasonably Delayed)

**August 24, 2010 Determination**

212.   Plaintiff repeats and incorporates herein each and every allegation contained in the paragraphs above.

213.   The Defendants' issued a final administrative decision in accordance with 7 C.F.R. § 11 and 7 C.F.R. § 780 on August 24, 2010.

214.    The Bank had adequate notice and opportunity to appeal the decision in a timely manner and failed to do so.

215.    It is not within the authority of the USDA to withhold or delay action to implement the determination.

216.    The Ortiz have the right to expect the Agency to act in accordance with the published rules and regulations applicable to the program; where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. The Ortiz have been prejudiced by the Agency's unlawful withholding and unreasonable delay of action.

217.    The agency is mandated to take action in accordance with the law, and has failed to do so. As such, pursuant to the Administrative Procedures Act, 5 U.S.C. § 706(1), the USDA shall be compelled to implement the final administrative determination of August 24, 2010 and any conclusions to the contrary should be held unlawful and set aside and Plaintiff should be granted declaratory and other relief from such action as authorized by 5 U.S.C. § 703.

### COUNT VIII – DECLARATORY JUDGMENT ACT

218.    Plaintiff repeats and incorporates herein each and every allegation contained in the paragraphs above.

219.    The USDA, through its Agency, the FSA, unjustifiably seeks reimbursement from Plaintiff for payments it made to Washington Mutual Bank and/or JP Morgan Chase Bank and is pursuing collection of the alleged debt. An actual controversy exists between the Ortiz and Defendants as to Defendants' right to reimbursement for FSA's payment to Washington Mutual Bank and/or JP Morgan Chase Bank.

220.    Plaintiff prays that this Court declare and determine, pursuant to 28 U.S.C. § 2201, the rights of the parties under the FSA's Guaranteed loan program and the Debt

**COMPLAINT FOR JUDICIAL REVIEW**

1 | Collection Improvement Act of 1996, and declare that no Federal debt exists from
2 | plaintiff to defendants, and that plaintiff is entitled to the relief hereinafter requested.

3 | PRAYER FOR RELIEF

4 | Wherefore, Plaintiffs Charles E. Ortiz and Susan T. Ortiz respectfully pray for the
5 | following relief:

6 | 1.      An order directing Defendants to transmit the entire administrative record in this
7 | matter to the Court and to Plaintiffs;

8 | 2.      An order preliminarily enjoining Defendants from pursuing any further collection
9 | actions of the alleged debt during the pendency of these proceedings, including but not
10 | limited to any threats or offsets directed against or in defeasance of plaintiffs tax refunds
11 | or any payments or benefits emanating therefrom;

12 | 3.      An order vacating the FSA's and NAD's actions, findings, and conclusions with
13 | respect to the Defendant's claims;

14 | 4.      An order compelling the FSA to implement the August 24, 2010 determination;

15 | 5.      A declaration that Defendant Department of Agriculture, including its division
16 | FSA, does not possess any right to reimbursement from Plaintiffs for any payments
17 | made by FSA to Washington Mutual Bank or JP Morgan Chase Bank;

18 | 6.      A declaration that plaintiffs Ortiz do not owe a federal debt to Defendant
19 | Department of Agriculture, its agent, the U.S. Department of the Treasury's Financial
20 | Management Service ("Treasury") or to any other agency or division of the U.S.
21 | government as a result of payments made by Defendant Department of Agriculture after
22 | the complete settlement of the debt on which settlement was based;

23 | 7.      An order directing Defendants and the US Treasury to refund to the Ortiz all
24 | monies collected from the offset of Federal and State tax refunds, which includes more
25 | than $11,500 offset to date, plus interest.

26 |

1    8.      Award monetary relief in the form of actual damages; (monetary damages) in the

2    amount of no less than $370,000.

3    9.      Judgment for costs and attorneys fees incurred by Plaintiff defending against the

4    Agency's actions and pursuing the within action; and

5    10.     For such other relief as the Court may deem just and proper.

6

7    **DATED** this 22nd day of May, 2020.

8

9

10                                            Respectfully Submitted,

11

12                                        ___/s/ *__Charles E. Ortiz____*
                                          Charles Ortiz, Plaintiff
13                                        dba Dirt Brothers Farms, Owner
                                          37331 Gilkey Rd
14                                        Scio, OR 97374
                                          503-394-3783
15

16                                        ___/s/ *__Susan T. Ortiz____*
                                          Susan Ortiz, Plaintiff
17                                        37331 Gilkey Rd
                                          Scio, OR 97374
18                                        503-394-3783

19

20

21

22

23

24

25

26