IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**C. E. ORTIZ and S. T. ORTIZ**,

      Plaintiffs,

    vs.

**UNITED STATES GOVERNMENT**
through **GEORGE ERVIN "SONNY"
PERDUE III,** in his official capacity
as Secretary of the U.S. Department of
Agriculture; and **RICHARD
FORDYCE**, in his official capacity as
Administrator of the Farm Service
Agency, a subdivision of the U.S.
Department of Agriculture,

      Defendants.

Case No. 6:20-cv-00826-AA
**OPINION AND ORDER**

_____

AIKEN, District Judge:

      Plaintiffs bring this action under the Administrative Procedure Act ("APA") in
which they seek declaratory and injunctive relief against the Secretary of United
States Department of Agriculture ("USDA") and the Administrator of the Farm

Page 1 – OPINION AND ORDER

Service Agency ("FSA" or "the Agency").    Plaintiffs challenge as arbitrary and capricious the administrative decision that Plaintiffs owe $83,003.88 federal debt. Before the court is Plaintiff's Motion for Summary Judgment ("MSJ") on all claims and Defendants' Cross-Motion for Summary Judgment ("Cross-MSJ") seeking dismissal of Plaintiff's claims.    For the reasons stated below, Plaintiffs' MSJ, ECF. No.18, is DENIED. Defendant's Cross-MSJ, ECF No. 19, is GRANTED and this case is DISMISSED.

## STATUTORY BACKGROUND

Plaintiffs are farmers in Linn County, Oregon. FSA administers a Guaranteed Farm Loan Program through which it backs private lenders extending credit to family farmers unable to qualify for standard commercial loans.    Under the loan program, FSA guarantees up to 90 percent of the loan, while the private lender services the loan directly.

When a farmer defaults on a guaranteed loan and the lender must liquidate the loan, the lender submits a liquidation plan to FSA for approval and an estimate of the potential loss.    7 C.F.R. §§ 762.149(b), (d).    FSA then pays the lender the guaranteed portion of the estimated loss. 7 C.F.R. § 762.149(d)(1).    After payment of the estimated loss, the lender remains "responsible for collecting the full amount of the debt and sharing these future recoveries with the Agency ...."    7 C.F.R. § 762.149(i)(1).    When all security has been liquidated and all proceeds received, the lender submits a final loss claim, and the lender reimburses FSA to the extent the

estimated loss exceeded the final loss.  7 C.F.R. §§ 762.149(i)(1), (10).  The amount

paid by FSA to the lender on behalf of the borrower constitutes:

> " . . . a Federal debt owing to the Agency by the guaranteed loan
> borrower.  In such case, the Agency may use all remedies available to it,
> including offset under the Debt Collection Improvement Act of 1996, to
> collect the debt from the borrower.  Interest charges will be established
> at the note rate of the guaranteed loan on the date the final loss claim
> is paid."

7 C.F.R. § 762.149(m).

FSA will reduce a lender's loss claim to the extent a loss is caused by the

lender's negligent servicing of the account.  7 C.F.R. § 762.149(i)(6).  Negligent

servicing is "servicing that fails to include those actions that are considered normal

industry standards of loan management or comply with the lender's agreement or the

guarantee."  7 C.F.R. § 761.2.  A lender's loss "will not be reduced," however, for

servicing deficiencies "that did not contribute materially to the dollar amount of the

loss" or so "long as the lender's efforts to locate and recover the missing collateral was

equal to what would have been expended" by a lender servicing an unguaranteed

loan.  7 C.F.R. § 762.149(i)(7).

The National Appeals Division ("NAD") provides administrative review for

adverse decisions made by FSA.  *See* 7 U.S.C. § 6991; 7 C.F.R. §§ 11.1–.15.  NAD

provides two levels of review.  First, a hearing officer holds a hearing for any timely

appealed adverse decision.  7 C.F.R. § 11.8(c).  The appellant has the burden to prove

by a preponderance of the evidence that the adverse decision was erroneous.  7 C.F.R.

§ 11.8(e).  These hearings are informal and not subject to rules of evidence, but the

hearing officer may "confine the presentation of facts and evidence to pertinent matters." 7 C.F.R. § 11.8(c)(5)(ii).

A party dissatisfied with the hearing officer's decision may request review by the Director of NAD ("the Director"). The Director reviews the hearing officer's determination using the agency record, the hearing record, the request for review, and written responses to the request for review "to determine whether the decision of the Hearing Officer is supported by substantial evidence." 7 C.F.R. § 11.9. The Director's determination is final, subject to judicial review. 7 C.F.R. § 11.13.

## FACTUAL BACKGROUND

On December 6, 2002, Plaintiffs signed a promissory note with a private lender, Washington Mutual Bank ("WAMU") for $215,000. AR 249. Plaintiffs applied for, and FSA issued a 90 percent guarantee on the loan, for a guaranteed amount of $193,500. *Id.* The loan was to be repaid by September 5, 2003. Plaintiffs did not perform as required by the loan agreement. WAMU sought to work with Plaintiffs by extending the time for repayment of the loan, as well as providing an additional non-guaranteed loan. AR309; AR390.

In 2005, WAMU filed suit against Plaintiffs in Linn County Circuit Court to collect full payment of the debt, plus interest owed, as well as to collect on the subsequent, unguaranteed loan. AR377. Plaintiffs did not think WAMU should have sued them because "they have the FSA loan guarantee." AR387. In February 2006, WAMU submitted its liquidation plan to FSA. AR390. The plan noted that Plaintiffs had been "flippant," "uncooperative, and [had] denied access to the collateral." *Id.*

FSA approved the liquidation plan on March 14, 2006.  AR251.  During the collection lawsuit, WAMU discovered evidence of Plaintiffs diverting crop proceeds to evade WAMU's security interests.  AR437 (chart of payments).  Collection efforts continued for several years.

On February 16, 2007, WAMU submitted an estimated loss claim seeking $182,413.26 from FSA.  FSA did not approve that estimate and reduced the loss it would cover to $101,075.24 to account for what it found to be miscalculated interest accrual, application of payments from Plaintiffs to an unguaranteed loan, the value of unliquidated pledged farm equipment, and unapproved legal expenses.  AR443–445.

WAMU submitted a revised proposed liquidation plan, and on August 14, 2008, FSA approved it and paid WAMU $101,075.24.  AR461.  The next month, on September 25, 2008, WAMU failed.  AR256.  JP Morgan Chase ("Chase") acquired WAMU's assets, and as part of the acquisition took over WAMU's collection efforts against Plaintiffs.  *Id*.; AR132.

Chase continued to prosecute the collection lawsuits in 2009 and 2010.  On December 28, 2010, Plaintiffs and Chase settled.  Compl. (ECF 1), Ex. C.  Plaintiffs agreed to pay Chase $75,000 to satisfy Chase's claims against Plaintiffs for both the FSA backed loan and the unguaranteed loan.  As part of the settlement, Plaintiffs acknowledged that they owed $171,091.38 plus interest on the guaranteed loan, and that FSA had paid Chase $101,075.24 under the guarantee.  *Id*. at 1.  The settlement

agreement required Chase to "subsequently file a Final Loss Claim with the FSA" on the loan."[1]  *Id.* ¶ 3.

Chase submitted a final loss claim on July 10, 2013 for $83,003.88.  AR 255. This final loss was less than what FSA paid WAMU in 2008, because Chase recovered more from Plaintiffs than WAMU had initially estimated could be recovered.  AR256. FSA collected a refund of $18,071.37 plus interest from Chase.  AR255.  After that repayment, FSA determined it had paid $83,003.88 on Plaintiffs' loan.

On November 13, 2013, FSA sent Plaintiffs a notice, constituting an "adverse decision," as defined in 7 C.F.R. § 780.2, that it had paid a loss claim on  Plaintiffs' behalf in the amount of $83,003.88 and that the letter served as a demand for payment.  AR5.   The adverse decision added that the payment on Plaintiffs' behalf constituted a "federal debt" that Plaintiffs owed with interest accruing at 5.25%.  *Id.* The adverse decision explained that the federal debt may be collected by administrative offset or other debt collection methods.   AR6.   And the adverse decision also notified Plaintiffs of their right to appeal the demand for payment with the issues under appeal "limited to the existence of the debt, and the amount of the debt."  AR7.

Plaintiffs timely appealed the adverse decision.   On March 28, 2014, the hearing officer upheld the decision.  AR101.  The hearing officer "considered the evidence and the parties' arguments" and found that Plaintiffs did not demonstrate

---

[1] FSA was not a party to the settlement agreement and did not consent to or participate in settlement discussions.  AR142.  Plaintiffs did not make the settlement agreement a part of the administrative record.

"error in FSA's decision" to demand repayment.  *Id.*; AR104.   In reaching this determination, the hearing officer found that Plaintiff's disagreement "with actions taken by their [l]ender and FSA's payment of the guarantee" were not relevant to "the existence of the debt, the amount of the debt[,] and proper notice."  AR104.

Plaintiffs requested review of the hearing officer's determination.  AR110–164 On June 2, 2014, the Director upheld the determination.  AR184.  The Director found Plaintiffs failed to produce evidence of error in the amount of the final loss, and that the hearing officer had determined that the adverse decision was decided in accordance with the FSA's regulations.  AR187-188. The Director also found that the record demonstrated that Plaintiffs had signed an application for a guaranteed loan that certified and acknowledged that "any amounts paid by FSA on account of liabilities of the guaranteed loan borrower will constituted a federal debt," and in such a case, that Plaintiffs had agreed that FSA " all remedies available to it to collect the debt."  *See* Compl. Ex. A at 6.

On review, Plaintiffs had also presented arguments disputing the collection actions that WAMU and Chase prosecuted against them.  The Director found "they are either not relevant to the issues in this case or do not demonstrate error."  AR188. The Director explained that its review concerned the adverse decision, not what steps the lenders took throughout managing debt collection, or FSA's decision to reduce the lender's estimated loss.  *See* Compl. Ex. A at 6.

On June 18, 2018, Plaintiffs requested reconsideration.  AR193–210.  On July 1, 2014, the Director denied the request.  AR229.  Nearly six years later, Plaintiffs

filed this action seeking judicial review of the Director's determination.  In their MSJ, Plaintiffs allege several separate claims, including that the Director erred in failing to address their arguments about the private lenders' collection actions.  Plaintiffs generally challenge FSA's collection efforts and also raise constitutional challenges to the administrative hearing process.  Defendants cross-move for summary judgment on all Plaintiffs' claims.

STANDARDS OF REVIEW

## I.    Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a) (2020).  Summary judgment is not proper if material factual issues exist for trial.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  Moving party has the burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial.  A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements.  *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party.  *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976).

Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of N. America*, 638 F.2d 136, 140 (9th Cir. 1981). That said, deference to the nonmoving party has limits. A party asserting that a fact cannot be true or is genuinely disputed must support the assertion with the admissible evidence. FED R. Civ. P. 56(c). The "mere existence of a scintilla of evidence in support of the [party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd.. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (internal quotations omitted).

When parties cross-moved for summary judgment, the court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *ACLU of Nev. V. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Later, the non-moving party bears the burden of designating "specific facts demonstrating

the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.*
The Supreme Court has directed that in such a situation, the non-moving party must
do more than raise a "metaphysical doubt" as to the material facts at issue.
*Matsushita*, 475 U.S. at 586.

## II. Judicial Review of Agency Decision

The APA governs judicial review.  7 U.S.C. § 6999.  Under 5 U.S.C. § 706, the
APA states that a reviewing court may set aside an agency's action if the action is
"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the
law."  If the agency fails to consider an important aspect of a problem or offers an
explanation for the decision that is contrary to the evidence, its action is arbitrary
and capricious.  *See Oregon Nat. Res. Council Fund v. Goodman*, 505 F.3d 884, 889
(9th Cir. 2007); *see also Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008).
It is also arbitrary and capricious if the agency fails to articulate a satisfactory
explanation for its action including a rational connection between the facts found and
the choice made.  *Friends of Wild Swan, Inc. v. U.S. Fish & Wildlife Serv.*, 12 F. Supp.
2d 1121, 1131 (D.Or. 1997).  Further, an agency's interpretation of its own regulations
"must be given controlling weight unless it is plainly erroneous or inconsistent with
the regulation."  *Thomas Jefferson Univ v. Shalala*, 512 U.S. 504, 512 (1994).  The
reviewing court must consider whether the agency's decision was based on relevant
factors and whether there has been a clear error of judgment.  *Nw. Motorcycle Ass'n
v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  This standard is narrow,
and the court may not simply substitute its judgment for that of the agency.  *Id.*

The plaintiffs bear the burden of showing the challenged decision violates the APA. *Kleppe v. Sierra Club*, 427 U.S. 390, 412 (1976). In making their case, the plaintiffs are limited to the information in the administrative record. *Friends of the Earth v. Hintz*, 800 F.2d 822, 828 (9th Cir. 1986). If the court finds the agency's decision unsupported, remand for further consideration is the proper course. *I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16 (2002); *Camp v. Pitts*, 411 U.S. 138, 143 (1973).

## DISCUSSION

### I. Constitutional Violations (Claim I)

Plaintiffs claim their constitutional rights were violated in two separate ways. First, they claim they were retaliated against in violation of their First Amendment rights. Pl.'s MSJ at 10. Second, they argue Defendants violated their rights under the Fifth Amendment's Due Process Clause. MSJ at 14.

### A. *First Amendment Retaliation Claim*

Plaintiffs allege that Defendants retaliated against Plaintiffs for exercising their First Amendment rights to administratively appeal the determination that Plaintiff's owed a federal debt. MSJ at 10. Defendants respond that Plaintiffs failed to plead such a claim in their operative complaint and cannot do so on the first instance in a motion for summary judgment. Cross-MSJ at 24. Given that Plaintiffs are *pro se*, the Court liberally construes Plaintiffs' Complaint to include a First Amendment claim, *see* Compl. at 35, ECF No. 1 (characterizing their claim as one under the First Amendment).

To prove a First Amendment retaliation claim, a plaintiff must allege that "(1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (quoting *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)). To prevail in a retaliatory claim, a plaintiff must show that the government defendant acted with a retaliatory motive, that the plaintiff was injured, and that the motive was a "but for" cause of the injury. *Hartman v. Moore*, 547 U.S. 250, 259-260 (2006). An objective standard governs the chilling inquiry; a plaintiff does not have to show that "his speech was actually inhibited or suppressed," but that the adverse action at issue "would chill or silence a person of ordinary firmness from future First Amendment activities." *Rhodes v. Robinson*, 408 F.3d 559, 568-69 (9th Cir. 1999).

Plaintiffs' argument is difficult to parse. Plaintiffs' claim is that Defendants have referred to collection-action investigations into what the lenders had determined was Plaintiffs' fraudulent diversion of crop proceeds. See MSJ at 12. Plaintiff contends that "[i]t would chill anyone to be accused of conversion of assets and/or fraud; particularly when there is nothing to support those claims." *Id*. at 13. Plaintiffs also argue that FSA engaged in "bad faith investigations." *Id*. Plaintiffs essentially contend that, during the collection lawsuit, any investigation into whether Plaintiffs were diverting funds from the lenders' right to liquidation was bad faith,

and any mention of that process by Defendants now is retaliatory obstruction of Plaintiffs' right to redress their grievances in court.

The Court finds that Plaintiffs have not produced evidence that Defendants' recitation of facts about early investigations into Plaintiffs' alleged fraud violated Plaintiff's First Amendment rights.   Plaintiffs have not shown that the filing of their administrative appeal was a "substantial and motivating" factor for Defendants' alleged conduct.   The record shows that Plaintiffs admitted to diverting funds. Plaintiffs stated that they diverted certain proceeds that should have been applied to the collateral for personal use.   AR674.5 (audio recording of hearing) at 0:38:25; *see also* AR187 ("Appellants acknowledged that they spent the remaining funds in the account.").   None of the evidence suggests that Defendants' discussion of such information obstructed Plaintiffs' rights to pursue their case or were retaliatory in any respect.   Defendants are thus entitled to summary judgment on Plaintiff's First Amendment claim.

### B.    *Fifth Amendment Due Process Claim*

Plaintiffs argue that the Director's decision affirming the debt failed to provide Plaintiff's a meaningful opportunity to be heard, violating Plaintiffs' due process under the Fifth Amendment.   MSJ at 14.   Defendants cross-move for summary judgment contending that Plaintiffs failed to show that they received constitutionally inadequate process.   Cross-MSJ at 27-28.

The Due Process clause of the Fifth Amendment provides that "no person shall...be deprived of life, liberty, or property, without due process of law."   U.S.

Const. amend. V. "[S]ome form of hearing is required before an individual is finally deprived of a property interest." *Mathews v. Elridge*, 424 U.S. 319, 333 (1976). Any person who is deprived of property must be allowed being heard in a meaningful time and in a meaningful manner. *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 146 F.3d 971, 984 (9th Cir. 1998); *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Plaintiffs may have a two-level administrative review of their case. 7 C.F.R. §§ 11.1-11.15. The Ninth Circuit has previously held that this process is adequate to satisfy the Due Process clause. *See, e.g.*, *Buckingham v. Sec'y of U.S. Dep't of Agr.*, 603 F.3d 1073, 1083 (9th Cir. 2010).

Here, assuming without deciding that the collection of federal debt implicates a protected property right demanding due process, the evidence is that Defendants afforded Plaintiff meaningful opportunities to be heard and that the administrative proceedings satisfied the Constitution's due process requirements. FSA notified Plaintiffs about the debt and Plaintiffs' right to appeal the debt. AR7. On appeal, Plaintiffs received a pre-hearing conference; an in-person hearing with a hearing officer; and an opportunity to submit an opening statement, declaration of facts, and relevant supporting evidence. AR15; AR308; AR342. After the first hearing, Plaintiffs submitted written rebuttal and closing statements. AR110; AR198. On review, Plaintiffs submitted a brief in support of their appeal, and a request for reconsideration once the appeal was denied. AR110; AR193. Under C.F.R. §§ 11.1-11.15, Defendants provided Plaintiffs opportunity to appeal in line with the Agency

standards.  Thus, the agency's process was adequate to satisfy the Due Process clause.  *See, e.g.*, *Buckingham*, 603 F.3d 1083.

Plaintiffs fail to establish that Defendants' actions were arbitrary and capricious in violation of Plaintiff's Fifth Amendment rights.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's Fifth Amendment Claim.

## II.    Challenge to Director's Decision (Claim II)

Plaintiffs contend that the Director's decision was arbitrary and capricious and an abuse of discretion because it "refused" to assert "jurisdiction" over Plaintiffs' factual assertions about WAMU and Chase and their collection efforts.  Further, that the Director failed to consider all aspects of FSA's determination to reduce the loss it owed to WAMU and Chase.  Plaintiffs assert that the Director should have examined more evidence about the collection process and FSA's regulatory practices with respect to the lenders.  Plaintiffs contend that they are entitled to judgment as a matter of law under 7 U.S.C. § 6998(c) and 7 C.F.R. § 11.10(b), because the Director "constrict[ed] the jurisdiction of his agency," rather than properly reviewed "the laws and facts relevant to [Plaintiffs'] appeal.

Defendants respond that Plaintiffs had ample opportunity to present evidence, facts, and more than eighty exhibits, complete with two levels of administrative review, appeal, and reconsideration.  Defendants assert that the Director considered all evidence and arguments, including the lenders' liquidation process, and did not abuse their discretion in deciding that Plaintiffs had not established error.

Plaintiffs cite to 7 U.S.C. § 6998(c), which sets forth the basis for the

Director's determinations and provides:

> "The determination of the hearing officer and the Director shall be based
> on information from the case record, laws applicable to the matter at
> issue, and applicable regulations published in the Federal Register and
> in effect on the date of the adverse decision or the date on which the acts
> that gave rise to the adverse decision occurred, whichever date is
> appropriate."

Plaintiffs also contend that the Director erred under 7 C.F.R. § 11.10, which

sets forth rules of procedure for the National Appeals Division and provides:

> "In making a determination on the appeal, Hearing Officers and the
> Director shall ensure that the decision is consistent with the laws and
> regulations of the agency, and with the generally applicable
> interpretations of such laws and regulations"

Here, the evidence is that the Director's determination addressed the amount

of the debt, including whether the loss should be reduced for unaccounted security.

AR187.   The Director stated that they had reviewed Plaintiffs' testimony, bank

records, FSA's final loss calculations and the basis for that loss amount, and found

that Plaintiffs "failed to produce evidence of any revenue that was not properly

credited to their guaranteed loan account. *Id*. The Director also confirmed that FSA's

decision to collect the debt "was decided in accordance with the Agency's regulations."

AR188. As for Plaintiffs' other arguments concerning WAMU and Chase, the Director

found they are "not relevant" or "do not demonstrate error." *Id*. That is, the Director

considered Plaintiffs' arguments and rejected them.

Plaintiff has not pointed to any evidence that the Director failed to consider an

important aspect of a problem or that the Director offered an explanation for the

decision contrary to the evidence. *See Oregon Nat. Res. Council Fund,* 505 F.3d at 889 *see also Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008). Neither did the Director fail to articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made. *Friends of Wild Swan, Inc.,* 12 F. Supp. 2d at 1131. Defendant is entitled to summary judgment on Plaintiff's second claim.

## III. Challenge to FSA's Regulatory Practices and Defendants' Statutory Authority

Plaintiffs' next make several difficult arguments to understand and which mostly relate to WAMU's and Chase's collection efforts, contending that the Director erred in failing to consider the claims, described above.

### A. *Defendants' Authority to Collect Debt from Plaintiffs*

Plaintiffs challenge Defendants' authority to take collection action against Plaintiffs. As can be seen from the statutory framework above, the law points the other way. Plaintiffs provide no evidence that Defendants' lack authority to collect from Plaintiffs the loss owed. Plaintiffs fail to demonstrate that the Director erred in its consideration of this argument, and thus do not carry their burden to prevail on summary judgment and Defendants are therefore entitled to summary judgment on this claim.

### B. *"Involuntary Cancellation" of the Loan Guarantee*

Plaintiff relies on 7 C.F.R. § 762.105 arguing that when Chase obtained WAMU's assets in its acquisition, that the transfer resulted in a cancellation of the guarantee and relieved Plaintiff of its obligation to pay for the loss.

Defendants explain that FSA paid WAMU under the guarantee in August 2008. AR 461. WAMU dissolved. The federal debt Plaintiffs owe here is based on the payment FSA made to WAMU before Chase acquired WAMU's accounts. When Chase collected on the accounts, it shared its recoveries with FSA, under 7 C.F.R. § 762.149(i)(1). FSA reduced Plaintiffs' federal debt. Defendants point to FSA's handbook and § 762.149 which discuss substitution of lenders and permissive guidance that FSA can terminate a loan guarantee, but assert that FSA did no such thing—and did not do so "automatically" as Plaintiffs contend.

Plaintiffs point to no evidence or authority to support their argument that FSA's loan guarantee automatically terminated to relieve Plaintiffs' of their obligation to pay in the event of default. Plaintiffs fail to demonstrate that the Director erred in its consideration of this argument, and thus do not carry their burden to prevail on summary judgment and Defendants are therefore entitled to summary judgment on this claim.

### C.    *Termination of Guarantee*

Plaintiffs assert that FSA terminated the guarantee in a Final Determination on August 24, 2010. Pl.'s MSJ at 20-23.

Evidence in the record shows that FSA sent Chase a letter objecting to inactivity to liquidate and collect on Plaintiffs default and requested return of the

estimated loss payment FSA had made. AR474. The letter stated that once the estimated loss had been repaid, FSA would consider the guarantee to be terminated. AR476. Chase responded to FSA that it was still pursuing collection efforts against Plaintiffs without success and FSA dropped its demand for refund of the estimated loss claim. Therefore, the guarantee remained in place.

Plaintiffs extract from that letter between FSA and Chase that Plaintiffs had a "right to rely" that the guarantee—and Plaintiffs' obligation to FSA—terminated. Still, Plaintiffs' own evidence demonstrates their acknowledgment that FSA had paid Chase $101,075.04 and that Chase would subsequently file a loss claim with FSA on the loan. *See* Compl., Ex. C ¶ 3. Plaintiffs point to no evidence that the letter FSA sent to Chase was a "final determination" that dissolved Plaintiff's obligation to repay FSA in the event of default. Plaintiffs fail to demonstrate that the Director erred in its consideration of this argument, and thus do not carry their burden to prevail on summary judgment and Defendants are therefore entitled to summary judgment on this claim.

### D.    *Settlement Agreement Effect on Federal Debt*

Plaintiffs contend that their settlement agreement with Chase released Plaintiffs from all liabilities owed to FSA, and that they owe no federal debt. Pl.'s MSJ at 23. Plaintiffs rely on the regulatory definition of "borrower" to contend that, once released from liability to the Chase, they were no longer "borrowers" in under the farm loan program. Pl.'s MSJ at 25-26.

Defendants respond that the federal debt was established before Plaintiffs' settlement agreement with Chase. Def.'s Cross-MSJ at 18. Defendants also argue that because the FSA was not a party to the settlement agreement, Plaintiffs' liabilities to the FSA still exist. *Id.*

Under the federal regulations, to which Plaintiffs agreed when they applied for an FSA-guaranteed loan, "[a]ny amounts paid by the Agency on account of liabilities of the guaranteed loan borrower will constitute a Federal debt owing to the Agency by the guaranteed loan borrower." 7 C.F.R. § 762.149 (m). The evidence is that the federal debt was created before Plaintiffs settled with Chase, on both Plaintiffs' guaranteed and unguaranteed debts, when FSA paid Chase $101.075.04 as an estimated loss. AR443; AR461. Plaintiffs do not demonstrate how their settlement with Chase renders Plaintiffs no longer responsible for the loss payment, subject to final adjustment for any "future recoveries" on the loan. Nor have Plaintiffs demonstrated that Defendants are not entitled to recoup their loss from Plaintiffs. *See* 7 C.F.R. § 762.149(i)(1). Plaintiffs fail to demonstrate that the Director erred in its consideration of this argument, and thus do not carry their burden to prevail on summary judgment and Defendants are therefore entitled to summary judgment on this claim.

### E.    *Chase and WAMU "Negligent" Liquidation Practices*

Plaintiff contends that, under 7 C.F.R. § 762.103(b)(2), a lender may not enforce a loan guarantee to the extent the loss results from negligent servicing, and that here, the banks' loss on the loan resulted from negligent servicing. Plaintiff

argues that the lenders were negligent in servicing the loan under 7. C.F.R. § 762.140, because, in 2004, WAMU failed to apply proceeds Plaintiffs had deposited into their account toward the loan and that in 2002, WAMU failed to liquidate Plaintiffs' farm equipment.

The regulations Plaintiffs cite govern a lender's rights and responsibilities when servicing loans that receive FSA's guarantee. "Lenders are responsible for servicing the entire loan in a reasonable and prudent manner, protecting and accounting for the collateral, and remaining the mortgagee or secured party of record. 7. C.F.R. § 762.140. "[N]egligent servicing" is defined as "servicing that fails to include those actions that are considered normal industry standards of loan management or comply with the lender's agreement or the guarantee." 7 C.F.R. § 761.2. Further, a loss "will not be reduced" for unaccounted security "as long as the lender's efforts to locate and recover the missing collateral was equal to that which would have been expended in the case of an unguaranteed loan in the lender's portfolio." 7 C.F.R. § 762.149(i)(7)(ii).

As a legal matter, Plaintiffs have not shown what effect the regulations governing a lender's rights and responsibilities under the Farm Loan Program have on Plaintiffs' rights and responsibilities with respect to FSA in the event of default.

Factually, the record shows that, rather than simply foist its loss onto FSA, the banks made substantial and extended efforts to deal "with [Plaintiffs'] very difficult and challenging loan account." AR443. Plaintiffs opposed collection efforts

years and the evidence is that the banks spent $258,000 in legal fees pursuing collection against Plaintiffs.

Concerning the 2004 proceeds, at the administrative hearing, Plaintiffs stated that they spent the proceeds themselves, explaining that the proceeds went toward inputs for the next year's crops. AR674.5. When Plaintiffs defaulted in 2005, the banks promptly filed a lawsuit to collect. AR377. During that litigation, the banks discovered evidence that Plaintiffs had diverted proceeds and the lenders then sued Plaintiffs again for fraudulent conveyance to try to locate and collect the diverted proceeds. AR436.

Concerning the "unliquidated farm equipment," evidence in the record shows that Chase contracted with "Woodburn Auction Yard for its auction services in the sale of certain equipment collateral" from which Chase retained sale proceeds of $7,750.00. Compl., Ex C ¶¶ 5 (settlement agreement between Plaintiffs and Chase).

Accordingly, Plaintiffs have failed to demonstrate that the banks were not "reasonable and prudent" in servicing the loan or in their collection efforts against Plaintiffs. Plaintiffs point to no evidence that WAMU or Chase could access the proceeds that Plaintiffs admitted to spending on crop production. Nothing in the record suggests that Chase's liquidation of $7,750.00 worth of farm equipment conflicted with "normal industry standards." Nor have Plaintiffs demonstrated how the bank's alleged negligence bears on their responsibility to repay the federal debt.

Plaintiffs have not established that the Director erred in its consideration of their claims, and thus do not carry their burden to prevail on summary judgment. Defendants are therefore entitled to summary judgment on this claim.

Plaintiffs raise a host of disputes with the way Chase and WAMU executed their servicing.  WAMU and Chase are not parties before the Court.  To the extent that Plaintiffs' argument concerns claims against Chase and WAMU, those claims are not considered.

### F.    *Restructured Loans*

Plaintiffs argue that during their administrative appeal, Defendants testified that the loan note "was never restructured" and that in Defendants' Answer to Plaintiffs' Complaint, Defendants "allege[ ] the opposite."  Pl.s' MSJ at 31.  Plaintiffs have not developed a legal or factual argument and provide no information that might demonstrate how the Director erred.  The Court finds that Plaintiffs are not entitled to summary judgment on this claim.

## IV.  Court Order Compelling Agency Action

Plaintiffs seek a Court order compelling FSA "to implement the final administrative determination of August 24, 2010."  Compl. ¶ 217. They seek this relief under 5 U.S.C. § 706(1).  Plaintiffs refer to the letter between FSA and Chase, discussed in Section III C.

Section 706(1) grants courts power to "compel agency action unlawfully withheld or unreasonably delayed." This power is "carefully circumscribed to situations where an agency has ignored a specific legislative command."  *Hells*

*Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010). Thus, to state a claim for relief under section 706(1), "the purportedly withheld action must not only be 'discrete,' but also 'legally required'—in the sense that the agency's legal obligation is so clearly set forth that it could traditionally have been enforced through a writ of mandamus." *Id.* (emphasis in original) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004)).

Plaintiffs identify no "legislative command" that requires FSA to implement the August 24, 2010 letter. Defendants assert that there is no "clearly set forth" "legal obligation" that the Agency must terminate the guarantee based on a ten-year-old letter sent to a third party. The Court agrees. Accordingly, Plaintiffs' legal argument fails, and Plaintiffs also identify no error on the part of the Director and so do not carry their burden to prevail on summary judgment. Defendants are therefore entitled to summary judgment on this claim.

V.     Declaratory Judgment

Plaintiffs seek a declaration under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, that FSA terminated Plaintiffs' guarantee, they owe no Federal debt, and the United States must return unspecified property to them. Pl.'s MSJ at 34. Plaintiffs fail to show they are entitled to any relief on their underlying claims. Accordingly, they are entitled to no relief under the DJA. *See Burns Ranches, Inc. v. U.S. Dep't of the Interior*, 851 F. Supp. 2d 1267, 1271 (D. Or. 2011) (discussing DJA's operation as "procedural only").

VI.     Damages

Plaintiffs bring their case under the APA. See Compl. ¶ 8 (citing 7 U.S.C. § 6999 & 5 U.S.C. § 701).  As part of their prayer, they seek "monetary relief in the form of actual damages; (monetary damages) in the amount of no less than $370,000." Compl. at 42.

Absent a waiver, sovereign immunity shields the United States and its agencies from suit.  F.D.I.C., 510 U.S. at 475.  The APA provides a limited waiver of the United States' sovereign immunity, with relief typically limited to remand of the proceeding to the agency.  I.N.S., 537 U.S. at 16 (2002).  Monetary damages are expressly exempted from the APA's limited waiver of sovereign immunity.  *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999) (citing 5 U.S.C. § 702); *see also Infante v. Drug Enf't Admin.*, 938 F. Supp. 1149, 1154 (E.D.N.Y. 1996) ("The APA by its terms does not apply where the relief sought is money damages.").

Accordingly, Plaintiffs' action thus must be dismissed to the extent it seeks monetary damages.  *Elias v. Connett*, 908 F.2d 521, 527 (9th Cir. 1990) ("Absent its consent to suit, an action against the United States must be dismissed.").

## CONCLUSION

For the reasons above, Plaintiffs' Motion for Summary Judgment, ECF No. 18, is DENIED, and Defendants' Cross-Motion for Summary Judgment, ECF No. 19, is GRANTED.  This case is DISMISSED and judgment shall be entered accordingly.

IT IS SO ORDERED.

Dated this  15th day of    May    2023.

_____/s/Ann Aiken_____
Ann Aiken
United States District Judge